J. G. SCHUMAKER, Appellant, v. HENRY EDINGTON, J. B. MURPHY and J. C. JOHNSON, Supervisors of Monona County; and GODFREY DURST, A. B. ERICKSON, J. P. HARRISON, E. C. COPELAND and D. SCHEELHAASE, Supervisors of Woodbury County, Iowa; and WOODBURY-MONONA DRAINAGE DISTRICT NUMBER TWO in said Counties.

Drainage: ESTABLISHMENT OF DISTRICT: ACTION OF BOARD: REVIEW.
1 In this proceeding for the establishment of a drainage district involving two counties the plan of drainage recommended by the engineers and adopted by the boards of supervisors is held as suitable as that recommended by the objectors; and in view of the superior facilities of the engineers and members of the boards to pass upon the merits of engineering problems of this character, which depend largely upon the topography of the country, the plan adopted is approved.

Same: LAND IN TWO COUNTIES: JOINT ACTION OF BOARDS. The boards
2 of supervisors of two counties, in establishing a drainage district involving lands in both counties, should act jointly and not concurrently as separate bodies. And the Act of the Thirty-third General Assembly equalizing the voting power of each board, where they may be of an unequal number, authorizes the members to vote separately at their joint sessions.

Same: APPEAL. An appeal from the joint action of two counties in
3 the establishment of a joint district may be taken from the judgment of a district court by filing the notice and bond with the county auditor of the county where the appeal is taken, as provided by the Act of the Thirty-third General Assembly.

*Appeal from Woodbury District Court.*—HON. WM. HUTCHINSON, Judge.

THURSDAY, OCTOBER 26, 1911.

APPEAL from decree affirming the establishment of a drainage district by the board of supervisors of Woodbury and Monona counties.—*Affirmed.*

*P. A. Sawyer* and *Shaw, Sims & Kuehnle,* for appellant.

*J. W. Anderson* and *Strong & Whitney,* for appellees.

LADD, J.—Petitions were filed with the auditors of Woodbury and Monona counties in August, 1908, praying for the establishment of a drainage district including lands in both counties. The boards of supervisors named Geo. D. Weintz, of Woodbury county, and F. M. Wooster, of Monona county, as commissioners, who appointed as engineer P. S. Holbrook, of Des Moines, and in due time these commissioners and the engineer filed a report, accompanied by a profile, with the auditor of each county. As they recommended the improvement substantially as prayed, notice was given the landowners, and on April 8, 1909, the date designated therefor, all members of the respective boards of supervisors, three from Monona county and five from Woodbury county, met at Sioux City and organized by electing Edington, from Monona county, chairman, and resolving that each member be entitled to one vote. They then unanimously adopted a resolution that the petition was sufficient in matter and form, that notice had been served as required, that the report of the commissioners and engineer had been duly filed, that "said drainage will be conducive to the public health, convenience, and welfare, and for the public benefit and utility, and that the same is declared to be necessary," and that, owing to the filing of claims for damages and objections, farther proceedings be continued till April 28, 1909. The mem-

bers convened as before at that time, and listened to evidence and arguments throughout the day and the day following, and on April 30th the commissioners and engineer, with J. M. Lewis as consulting engineer, were directed to reinvestigate especially as to location of the main ditch, and adjournment was taken to June 15th, when the commissioners and engineer filed an amended and substituted report, which Lewis acquiesced in and approved. Some important changes were made, but the main course of the ditch proposed continued east of the West fork of the Little Sioux river. The objectors were not opposed to the project of draining the district, but insisted that the ditch should be excavated part of the way about one and one-half miles west of that recommended. Adjournment was taken to June 23d, when, on motion, the amended and substituted report was adopted; two members from Woodbury county voting in the negative. Appraisers were appointed, notice ordered served on owners of land first included by the last report, and adjournment taken till August 10, 1909. Upon convening then petitions for additional laterals were filed, and a general discussion for and against the establishment of the ditch followed. A motion to reconsider the plan previously adopted failed, four members from Woodbury county voting for it, and one member from Woodbury county with the three members from Monona county against; but they unanimously agreed to view the proposed district, in order to ascertain whether any lands should be added to or taken from the district, and, after doing so, again convened, when a discussion of the relative merits of the different plans was resumed, and the commissioners and engineer were directed to ascertain and report if other lands ought not to be included in the district. An adjournment was taken until September 21, 1909, when a resolution adopting the report of the commissioners and engineer as again amended was passed by a vote of seven to one, and notice

to owners of land included by the last amendment ordered given. There was an adjournment until October 28th, when the members again convened, and, after hearing claims for damages several days, adjourned to November 10th, and were in session on that day and the next hearing claims for damages, and on the 12th heard argument for and against the proposed improvement, at the close of which a resolution reciting everything essential in establishing the district and ordering the improvement was adopted by the vote of one member from Woodbury county and three members of Monona county for the resolution and four members of Woodbury county against. This recital of the proceedings of the joint sessions of the boards of supervisors indicates with what care the members acted, both in informing themselves of the merits of the different routes proposed and in striving to settle upon that best adapted to drain the territory affected.

I. The contention of the appellant is that the evidence introduced on the trial proved that the district ought not to have been established, in that the ditch was not properly located. The West fork of the

1. DRAINAGE: establishment of district: action of board: review.

Little Sioux river flows down between the hills through section 33 in township 87, range 45, and section 4 in township 86, in Woodbury county. Before reaching these sections, it drains about 250,000 acres of land, and in times of high water overflows its banks and floods the lands below. By the plan adopted it is proposed to excavate a ditch from the north line of section 4 and straighten the course of the river to the south line of section 9, about eighty rods west of Holly Springs (the southeast corner); thence south to ninety-five and one-half feet west of the east line of section 15; then due south to the west quarter corner of section 10 in township 85, in Monona county; and thence southeast into the Monona-Woodbury ditch near the southwest corner of the S. E. ¼, S. W. ¼ of section 12 in

township 94, in Monona county. For the first two hundred stations, the bottom is to be fourteen feet wide and thirteen feet deep, and from there on the bottom thirty feet wide and the ditch fourteen feet deep. By the plan rejected the ditch was to tap the river a half mile farther north than that adopted, and run south, but a considerable distance west of the bed of the river, into Jungerward Lake (seventy-five to one hundred yards wide and one hundred and eighty rods long), and from the south end of it (in the N. E. ¼, section 9), southwest to near the quarter corner of section 17 in township 86, Woodbury county, and then directly south three and one-half miles to the center of section 32; thence southeasterly to the west corner of section 10 in township 85, Monona county, where the ditch ordered to be excavated turns to the southeast, and from there on both have the same course. It is impractical to review the evidence bearing on the feasibility of the respective routes in detail. That adopted is one and one-half miles shorter, and necessarily the fall is somewhat greater, and the water would flow through it in less time. Less diking would be required. On the other hand, that rejected extends along the lowest ground toward which the flood waters seem to flow first, and, though a greater amount of diking would be required, it would be better located for the drainage of surface water; also for at least two miles it affords an outlet in addition to the river. These last advantages are somewhat offset by the excavation of a lateral by the plan adopted, extending from the south end of the lake southwesterly to the west quarter corner of section 9 in township 86, and thence directly south into the West Fork river at the southwest corner of the N. W. ¼, N. W. ¼ of section 28 in the same township. This lateral, it is said, will carry the overflow waters from the lake, and which come down from the hills to the west and northwest below the head of the main ditch. A defect in the rejected plan is that it must intersect the river

in section 32 of the last-named township, and near where another ditch, known as the "Farmers'," flows into it through Whiskey creek; but engineers testifying in behalf of the objectors seemed to think the waters could be made to unite, and, after flowing on together for one thousand feet, amicably separate and pursue their respective courses in the river and ditch, without undue congestion of the waters.

The plan approved contemplates the intersection of the Skinner ditch about one and one-half miles below Holly Springs; but, according to the evidence, this ditch is of doubtful utility. By straightening out the river from the head of the proposed ditch, the carrying capacity will be multiplied by nearly four, and, according to the engineer, the velocity of the flow somewhat increased for at least four miles up stream. The expense of the plan rejected would be about $10,000 greater than that adopted, and there was so little difference in the relative merits of the two routes that the consulting engineer was influenced by this circumstance to approve of that adopted, although "all things being equal," he would have preferred the west route. Another matter should be mentioned. The east route (that adopted) passes through higher land, some of which has been tiled into the Monona-Woodbury ditch to the east. Lowering the flow of the West Fork river a few inches will fully protect these lands, while along the west route the water gathers in large quantities when the river overflows its banks. Theoretically, the allowance of damages meets these objections, as well as the readjustment of tiling; but carrying a large body of water over land out of its natural course would seem a continuing menace to the fields nearby. The answer is that the menace would be quite the same were the waters gathered in a ditch elsewhere. But the owners of lands nearby might not have equal ground of complaint. Everyone, of course, would prefer that such a ditch be located through the land of

his neighbor rather than through his own. Moreover, it must not be overlooked that the main purpose of the improvement is, not to relieve the district of ordinary surface water, but to relieve the West Fork river, by affording an adequate outlet for the waters which overflow its banks and now frequently flood the country below.

It is apparent from the above, and much more that might be said, that there are strong arguments for each plan and legitimate criticisms of each. Neither has much to commend it over the other; and, this being true, we are not ready to say that the commissioners and engineer, the consulting engineer, the boards of supervisors, and the district court are all mistaken in their approval of the plan adopted. All these, save the court, had been on the ground, and were in a better situation than we to pass on the merits of an engineering problem depending largely upon the topography of the country for its determination. After a careful examination of the record, we are not ready to say therefrom that the route is not as practicable, nor that it will not be as efficient, as would have been that proposed by the objectors. If there be doubt, it is as to the capacity of that portion of the ditch strengthening the river; for it would seem that the ditch below will carry an equal volume of water, and that this ditch might well be enlarged enough to equal the carrying capacity of the river below where the ditch leaves it. No question as to the necessity of drainage is raised, and that the benefits resulting will exceed cost is put beyond cavil. We are not inclined to interfere with the conclusions of the district court.

II.   It is contended that the boards of supervisors should have acted as separate boards, instead of organizing 2. Same: land in as one body. Section 1989-a29, Code Supp., two counties: requires landowners to be "notified of the joint action of boards. time and place where the boards of the several counties will meet in joint session for the consideration

of said petition and return." The sections following provide that the boards shall sit jointly and act jointly in all matters to be disposed of by the joint action of the several boards. "Joint," according to the lexicographers, means united or combined, and the law contemplated that whatever the boards did must have been by them united or combined, and acting as one body. They were to act jointly, not concurrently, as separate bodies. That was the result of the organization as effected. Whether the vote on propositions considered should have been by each board acting as a unit, or by the members separately, is another question not necessarily to be determined; for prior to the 19th day of April, 1909, the vote had been unanimous on every proposition adopted. The method of voting, then, could not have influenced the result. On that day the Legislature amended the section of the Code Supplement mentioned by adding thereto the following: "When the boards of supervisors are of unequal number, each member of the board of the smallest number of members shall cast a full vote and each member of any larger board shall cast such fractional part of a full vote as may be determined by making the smallest number of the membership of any board the numerator and the number of the membership of any such larger board entitled to vote the denominator of such fraction, so as to equalize the voting power of each board." Acts Thirty-Third General Assembly, chapter 118, section 18. This clearly authorized the members to vote separately at the joint sessions of the boards of supervisors, and all the subsequent resolutions were adopted by a clear majority of the votes as so cast.

III. Notice of appeal from the judgment of the district court and the bond required were filed with the

3. SAME: appeal.

county auditor of Woodbury county, and appellee contends this did not confer jurisdiction, relying on *In re Appeal of Head,* 141 Iowa, 651.

Since that decision, the Legislature has amended section 1989-a35, Code Supp., by adding thereto: "Notice of appeal and bond shall be given to and filed with the county auditor in the county where the appeal is taken." Acts Thirty-Third General Assembly, chapter 118, section 20. The appeal was perfected as thus prescribed, and in harmony with the rule in appeals from assessment of damages. *Cooper v. Calhoun County,* 152 Iowa, 252.

Some other questions are raised by appellee, but, in view of our conclusion, are not necessary to decide. *Affirmed.*