WEASEL HEAD ET AL., APPELLANTS, *v.* ARMSTRONG, COUNTY TREASURER, ET AL., RESPONDENTS.

(No. 7,369.)

(Submitted March 28, 1935.   Decided April 8, 1935.)

[43 Pac. (2d) 243.]

*Mr. S. J. Rigney*, for Appellants, submitted a brief and argued the cause orally.

*Mr. W. R. McDonald, Messrs. Ford & Smith*, for Respondent School District No. 9, and *Mr. Horace W. Judson*, for Respondent A. E. Armstrong, County Treasurer of Glacier County, submitted a brief; *Mr. S. C. Ford* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On October 31, 1931, the county superintendent of Glacier county made an order creating school district No. 7 out of a part of the territory embraced within district No. 9 of that county. Thereupon a board of trustees was appointed, qualified and acted by hiring a teacher and opening school in what is known as the "No Coat" schoolhouse, and assumed charge of the school theretofore conducted by district No. 9 at the "Old Agency." On November 4, 1931, an appeal was taken from the action of the county superintendent to the board of county commissioners, which appeal resulted in an order

of the board, on December 9, 1931, setting aside the order of the county superintendent.

On December 11, 1931, a suit in equity was instituted to set aside the order of the board, and thereupon the presiding judge issued an order to show cause and an order that the order of the board ''be stayed until the final determination of this proceeding.'' The presiding judge disqualified himself, and called in an outside judge to hear the matter. The proceeding resulted in a decree, of date June 29, 1932, affirming the order of the board, but on appeal to this court the judgment was reversed and the order of the board set aside. (*Grant* v. *Michaels*, 94 Mont. 452, 23 Pac. (2d) 266.) On remittitur from this court the district court entered judgment, of date July 7, 1933, in accordance with that opinion.

During the school year of 1931–1932, funds in excess of $5,000 were apportioned, and credited on the books of the county treasurer, to district No. 7. For the same school year, district No. 7 conducted the school at the ''Old Agency'' for about a month, and at the ''No Coat'' school throughout the term. On the filing of the appeal to the board, district No. 9 took over the ''Old Agency'' school, and thereafter paid a part of the teacher's salary at the ''No Coat'' school—this because district No. 7 was short of funds, and without protest from district No. 7, because, in the words of trustee Grant, ''We didn't know just where we were at.'' There were not sufficient facilities within the new district to accommodate the children within its borders, and, because of this fact, the lack of funds and the uncertainty, the trustees of the new district were ''willing to let District No. 9 go ahead very much the same as they had done before the creation of District No. 7,'' although no agreement to that effect was entered into between the trustees of the two districts and no formal consent to the manner in which district No. 9 proceeded was given, nor was any formal protest made.

It will be noted that no funds were apportioned to district No. 7 for the school year of 1932–1933. In that year district

No. 9 conducted three schools within the confines of district No. 7 and paid the expenses thereof; it also built a schoolhouse within district No. 7 without consulting the trustees thereof or permitting that district to choose the site therefor. This building cost district No. 9 $1,325.60; it was built on skids, on land evidently not owned by the district, and can be readily moved.

Prior to October 1, 1933, the defendant treasurer had honored warrants drawn by district No. 7 on the funds of the district, leaving a balance to the credit of the district of $1,558.71. In October the district issued warrants against this balance which the county treasurer refused to pay therefrom. Thereupon the district instituted proceedings against the treasurer and secured the issuance of an alternative writ of mandate, to which the treasurer made answer, alleging that the funds mentioned had been unlawfully credited to district No. 7, and should have been credited to district No. 9. As a further answer and cross-complaint, the treasurer relates the history of district No. 7, and alleges that district No. 9 contends that all funds credited to district No. 7 were wrongfully and illegally so credited; that he cannot pay out any of such funds without assuming a personal liability and creating a liability upon his official bond; that he has no interest in the controversy between the two districts; and that district No. 9 is a necessary party to a determination of the action. On application of the treasurer, the court ordered that district No. 9 be joined as a party defendant.

Answering the complaint, district No. 9 set up the facts with respect to the division of the district, and alleged that the funds involved were illegally credited to district No. 7 and should have been credited to it. As a further defense, it alleged that it received $40,500 from the federal government in 1932, for the education of Indian pupils within its borders, and of this sum expended $5,537.70 for the education of Indian pupils residing in district No. 7; further, that it expended $1,730.93 in the school year of 1931–1932, maintaining the "Old Agency" school, and in the year 1932–1933 expended

$5,622.43 maintaining three schools within district No. 7, and erected a schoolhouse therein at a cost of $1,325.67. The prayer is that district No. 7 be adjudged not entitled to the $5,659.58, credited to it, and that the treasurer be directed to pay warrants lawfully issued by this answering defendant to the extent of moneys in his hands belonging to it, including the $5,659.58.

A demurrer to this answer was interposed, and thereupon the defendant district filed an amended answer and cross-complaint wherein it is alleged, among other things, that district No. 9 has to its credit $10,563.41, against which it has issued warrants which the treasurer has refused to pay on account of this controversy. It prays that district No. 7 be adjudged not entitled to any moneys credited between October 1, 1931, and July 7, 1933; that it be compelled to issue warrants to district No. 9 in the sum of $4,070.87; and that the treasurer be directed to transfer the balance in controversy—$1,586.71— to the credit of district No. 9 and to pay all warrants lawfully issued by that district.

Replies to the amended answer and cross-complaint were filed, and the matter was tried to the court without a jury. On the pleadings and the evidence adduced, the court made findings of fact on which it based its judgment, which declares: (1) That district No. 7 was legally created on the seventh day of July, 1933, and was not theretofore a duly created legal entity; (2) that it was wrongfully credited with the sum of $5,659.58, which should have been credited to district No. 9; (3) that the treasurer forthwith credit district No. 9 with the balance on the books to the credit of district No. 7; (4) that district No. 9 have judgment against plaintiffs for $4,076.87; (5) that district No. 9 was lawfully credited with $10,563.41, between October 1, 1931, and October 1, 1933; the petition for the writ was then denied, and the treasurer and district No. 9 were awarded their costs against district No. 7; (8) that the two districts forthwith apply to the county superintendent for an order dividing ''the property and funds of the said school districts as of the date of July 7, 1933.'' The plaintiffs have

appealed from this judgment, and base a specification of error upon each of the conclusions drawn therein.

The court committed manifest error in its first conclusion to ▇ the effect that district No. 7 was "created" by the judgment entered by the district court on July 7, 1933, in obedience to the remittitur from this court. Neither the district court nor this court has power to "create" a school district. A new school district can only be "created" by a county superintendent of schools on compliance with the provisions of section 1024, Revised Codes 1921, as amended by Chapter 138 of the Laws of 1927 (sec. 1). This was done in the instant case by the order of the county superintendent of schools for Glacier county, made on October 31, 1931. District No. 7 was legally created on that date. (*Grant* v. *Michaels,* above.)

It is true that the statute grants the right of appeal from the order made, to the board of county commissioners, but there is no duty imposed upon the parent district to perfect such an appeal, and it cannot be questioned that, had no appeal been perfected, the district would have been authorized to function from the date of its creation. If it is desirable that a school district should not come into being as a legal entity capable of functioning, until the period granted within which to appeal has expired, or an appeal has been perfected and decided, we should have some such provision as that discussed in the Kansas case on which the defendant here relies. There the county superintendent is required to post notice of the intended order creating a district, and during the period of posting an appeal may be taken, so that the appeal is taken and decided before the district is formed and its officers elected. (*Jeffreys* v. *School District,* 3 Kan. App. 154, 42 Pac. 830.) A somewhat analogous statute is responsible for the decision of the supreme court of Iowa, cited by defendant (*State ex rel. Consol. Independent School District* v. *Consolidated Independent School District,* 190 Iowa, 1154, 181 N. W. 495).

We have no such provisions as the above; under our statutes the appeal, at most, may suspend the order of creation and, consequently, the functioning of the newly created district

pending a decision on the appeal. Such a result was reached, on a statute similar to ours, on the ground of public policy, in order to prevent the confusion and embarrassment which would result from a reversal of the order of creation, had the trustees of a new district theretofore issued bonds, let contracts for buildings, and hired teachers. (*Consolidation of School District* v. *Consolidated District,* 151 Minn. 52, 185 N. W. 961.) This rule is salutary, and might well be enacted into law in this state; but, even if we were to hold that the statute justified a holding that the order creating the district would not be effective until the time for appeal had expired or an appeal had been taken and determined, such holding would not solve the problem before us.

On the filing of the proceeding to set aside the order of the board of county commissioners (*Grant* v. *Michaels,* above), instituted immediately upon the making of the order, the district court made an order staying its operation until the final determination of the proceeding. Evidently the judge deemed the showing made sufficient to warrant a reversal of the board's order and attempted to preserve the *status quo* and insure the schooling of the pupils residing in district No. 7 pending an anticipated lengthy period of litigation. The defendants now contend that this restraining order was void because made without notice and upon a petition verified only on information and belief, but they made no attack upon it in the cause in which it was issued (*Grant* v. *Michaels,* above), and for a period of two years the county and district officials acted upon the assumption that the board's order was stayed. As the county commissioners and district No. 9 did not see fit to challenge the order prior to such action, it can hardly be now said that those officials should be penalized for assuming that the order was valid and effective, and we will not pause to determine whether or not the order is controlled by the statutory provisions relating to injunction.

On the other hand, the record does not justify the contention of the plaintiffs that district No. 9 acted arbitrarily and without right in maintaining school within district No. 7. While

no formal agreement was entered into, the two boards seem to have acted in harmony, to the end that schools might be maintained for the children pending the outcome of the litigation, and it only remains to arrive at an equitable settlement of their monetary entanglements.

As district No. 7 was created on October 31, 1931, the direction found in conclusion "8" of the judgment that the division of the "property and funds" should be made "as of the date of July 7, 1933," is erroneous. The funds of district No. 9 should be divided in accordance with the provisions of section 1028, Revised Codes 1921, as they existed on October 31, 1931, and, as to the "property," each district shall hold and own all permanent property, such as sites, schoolhouses and furniture, situated within its boundaries. (Sec. 1028.)

With reference to the credits which should have gone to district No. 7 from the date of its creation to the end of the litigation, the record discloses that, in August, 1933, the boards of trustees of the two districts met in joint session and authorized a representative of each and the county treasurer to compute the amount of such credits, if district No. 7 was entitled to any credits during that period.

The total amount which should have been credited to district No. 7 is $16,174.25. Against this amount must be charged the amount already credited, or $5,524.84, and the amounts actually expended by district No. 9 in good faith for the maintenance of schools within district No. 7, while the latter district did not feel that it could function, or $7,353.36, a total of $12,878.20, leaving a balance credit to district No. 7 of $3,296.05. In lieu of conclusions Nos. 3 and 4, the defendant county treasurer should be directed to transfer from district No. 9 to district No. 7 the difference between the above balance and the sum of $1,558.71, or $1,737.34, and such additional amount as the county superintendent shall find to be due district No. 7 from district No. 9, under section 1028, above.

As to the new building erected during the period of litigation within the boundaries of district No. 7: Under the facts disclosed, the cost of the building cannot be charged against

district No. 7; the district itself could not have erected the building in the manner it was erected from school funds. The building remains the property of those erecting it; as shown, it is set on skids and can be easily removed from its present location, and this may be done, or, of course, the building may be sold to anyone desiring to purchase it.

The judgment is reversed and the cause remanded to the district court of Glacier county, with direction to enter judgment in conformity with this opinion.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument, and takes no part in the foregoing decision.

Rehearing denied May 22, 1935.