STATE EX REL. SCHOOL DISTRICT NO. 8 ET AL., RELATORS, v. LENSMAN ET AL., RESPONDENTS.

(No. 7,862.)

(Submitted September 29, 1938. Resubmitted January 11, 1939. Decided March 17, 1939.)

[88 Pac. (2d) 63.]

*Messrs. Pope, Smith & Smith,* for Relators, submitted an original and supplemental briefs; *Mr. Walter L. Pope* and *Mr. Russell E. Smith* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Mark H. Derr,* Assistant Attorney General, for Respondents, submitted an original, a reply and a supplemental brief; *Mr. Derr* argued the cause orally.

*Mr. A. J. Brower,* for Interveners Joint School District No. 28 and others, submitted an original and supplemental briefs, and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an original application for a writ of mandate to compel the board of county commissioners of Lake county to act on the budget presented to it and to levy the tax necessary to meet the requirements of the budget of a school district.

The facts as developed by appropriate pleadings are that Joint School District No. 28 contained territory lying partly in Lake and partly in Missoula counties. A petition was filed to create a new district from territory lying wholly within the joint district, but including all of the territory of Joint District No. 28, which was within Missoula county, and a portion of the territory of this district lying in Lake county. This petition was presented to the county superintendents of the two counties, who made an order creating the new district known as Joint District No. 8.

An appeal was thereafter perfected to the boards of county commissioners of Lake and Missoula counties; these boards, sitting jointly, heard the appeal. After hearing, the vote of the commissioners was a tie, resulting in no action on the appeal. The county superintendents thereupon appointed trustees of the new district, who furnished the county superintendent of Lake county a preliminary budget for the new school district containing the proper information. The county treasurer of that county attached to this budget a statement for the new district as required by the statute—section 1019.10; Revised Codes. The certificate was attached by the county clerk as provided in section 1019.11. The county commissioners of Lake county thereafter met as the board of school budget supervisors, but refused to consider the budget for the new district on the ground that the district was not legally created. This proceeding followed, and in it Joint School District No. 28 and its trustees, individually,

and in their official capacity, intervened and joined with respondents in resisting the proceeding.

Joint school districts, i. e., districts lying partly in one county ■ and partly in another, may be formed in the same manner in which other new districts are created, except that the petition must be made to the county superintendent of each county affected, and all things to be done by the county superintendent must be done by concurrent action of both superintendents. (Sec. 1035.)

Some question is raised in this case as to whether an appeal lies to the boards of county commissioners where a joint district is created. In the event of the creation of a district from territory lying wholly within one county, section 1024 provides for an appeal to the board of county commissioners. Section 1035 provides that joint districts may be created in the same manner as other new districts, with certain exceptions as to procedure which we have heretofore noted. This section would indicate that an appeal would lie to the boards of county commissioners in the event of the creation of a joint district.

This court, in the case of *School District No. 28* v. *Larson,* 80 Mont. 363, 260 Pac. 1042, 1046, said of these sections: "As is seen, section 1035 is very brief, and, in itself, is incomplete. Differing from the other sections mentioned, it does not, in itself, provide a complete plan of procedure. It refers to 'the same manner as other new districts are formed.' By that expression evidently it refers to some provisions of either section 1024 or section 1025. All are in the same chapter of the Codes (Political Code, chap. 79), which treats of school districts, their organization and formation. The three sections mentioned are the only sections of the Codes which can have any possible application to the issues of this case. Hence it is inevitable that section 1035, for a part of its procedure, draws on either section 1024 or section 1025, which one, in a case such as this, is not plain." Section 1025 has since been repealed. This court there proceeded to test the sufficiency of the petition with reference to sections 1024 and 1025, holding it to be insufficient under either section.

Our legislature has apparently adopted this construction of this existing statute, by section 1037.2, where it declared that districts created out of joint districts without the concurrent action of the various county superintendents and boards of county commissioners of the various counties having territory within the districts, are thereby declared to be valid and subsisting districts. If the boards of county commissioners were without authority to hear an appeal, there was no occasion for their being mentioned in this section. True, this section is only a curative statute, but it discloses the construction of the other statutes to which we have referred, as being in accord with our views.

By the provisions of section 1024, upon the creation of a new school district, an appeal lies to the board of county commissioners. Since no question is raised as to the sufficiency of the proceedings had to perfect the appeal, we need not consider them. After the appeal is perfected the county superintendent must transmit, within the time provided, to the boards of county commissioners and file in the offices of the county clerks, the notices of appeal and all petitions, plats and papers in their possession pertaining to the petition for the creation of new school districts. Upon receipt of these papers and documents the county clerk must give notice, in the manner provided by this section, that the board of county commissioners will, upon a certain date, "finally hear and determine said appeal and said petition for the creation of such new district."

The relators contend, in effect, that the new district was created by the concurrent action of the county superintendents, and, since that order was not set aside on appeal, the order of the county superintendents is a valid, subsisting order creating the new district. The respondents and interveners contend that the appeal operated to set aside and vacate the order of the county superintendents, and therefore no district has been created. The primary question presented by these contentions is: Did the perfection of the appeal operate to vacate and annul the order of the county superintendents; or did it, at the most, operate to suspend or delay the effective creation of the district?

An appeal, in general terms, is a resort to an upper court or tribunal. (*State ex rel. Johnson* v. *Case,* 14 Mont. 520, 37 Pac. 95.) This court, in the case of *State ex rel. Hall* v. *Peterson,* 55 Mont. 355, 177 Pac. 245, held that on appeal from an order of the county superintendent to the board of county commissioners, the hearing is *de novo* upon the merits. It is here argued that, by reason of the hearing being *de novo,* the order is therefore annulled as soon as the appeal is perfected.

In the case of *Weasel Head* v. *Armstrong,* 99 Mont. 364, 43 Pac. (2d) 243, 245, we said: "A new school district can only be 'created' by a county superintendent of schools on compliance with the provisions of section 1024, Revised Codes 1921, as amended by Chapter 138 of the Laws of 1927 (section 1). This was done in the instant case by the order of the county superintendent of schools for Glacier county, made on October 31, 1931. District No. 7 was legally created on that date. (*Grant* v. *Michaels,* above [94 Mont. 452, 23 Pac. (2d) 266]). * * * Under our statutes the appeal, at most, may suspend the order of creation and, consequently, the functioning of the newly created district pending a decision on the appeal."

It is sometimes said, referring to appeals from justice courts to another court where a hearing is had *de novo,* that the effect upon the appeal being perfected is to annul the judgment below in the justice's court. A case frequently cited to sustain that statement is that of *Bullard* v. *McArdle,* 98 Cal. 355, 33 Pac. 193, 35 Am. St. Rep. 176. Without question the California decision holds as indicated; but the authorities cited in support of the conclusion there announced merely state that upon such appeal the judgment is stayed and not annulled at once. We have examined many authorities with reference to appeals from justice courts which use rather sweeping language in line with that of the California court, but in most instances the courts were considering cases where the only question before them was whether the judgment was stayed pending the appeal. Courts following this rule, when the appeal was dismissed, in subsequent decisions, to avoid a reversal of the former ones, have been forced to hold that the dismissal of the appeal operated to re-

vive the judgment of the justice court. We are not persuaded by decisions of this character.

We have said in the *Weasel Head Case,* supra, that the district was created by the order of the county superintendent, and, at most, pending the appeal the order creating the district was only stayed. There is no conflict between the decision in that case and the one in the *Hall Case,* wherein it was said that the hearing was *de novo.* The former related to the effect of the order of the superintendent, and the latter to the manner of procedure on the appeal.

It is generally held, in the absence of a statute with reference ▉ to appellate courts, where, after hearing, the judges of the appellate court are equally divided in opinion, that the judgment, order or decree appealed from stands affirmed. (5 C. J. S., Appeal and Error, sec. 1844 (b), p. 1314.) This is a universal rule.

It is contended that the proceedings for the creation of the ▉ district were invalid, in that, in describing the boundaries of the proposed new district, a number of sections of land were included which are within another independent school district of Missoula county, and that no notice was given of the proposed inclusion of this territory as provided by law. While some error in the description may be present in the petition, yet it is clear from the reading of the petition that it was only intended to include within the boundaries of the new district certain territory within the boundaries of Joint District No. 28. Only territory included within this joint district was included in the new district. It is not every error in a description which will invalidate a proceeding or a conveyance. (*State ex rel. Arthurs* v. *Board of County Commrs.,* 44 Mont. 51, 118 Pac. 804; *Howe* v. *Messimer,* 84 Mont. 304, 312, 275 Pac. 281.)

Furthermore, ''The petition is not a pleading. Its sufficiency is not to be tested by subjecting its contents to analysis by the trained legal mind searching for, or bent on discovering, defects; nor are its averments to be construed against those who have signed it.'' (*State ex rel. Hall* v. *Peterson,* supra.) We think the petition sufficient under the foregoing authorities.

It is contended that the action of the superintendents in grant-
ing the petition for the creation of the district was arbi-
trary, in that they failed to give consideration to the disadvan-
tages which would result to the old district by the creation of
the new district in the matter of the loss of taxable valuation
of property located in the new district, and similar questions.

This court, in the case of *State ex rel. Redman* v. *Meyers*, 65
Mont. 124, 210 Pac. 1064, 1065, has said: "A school district is
merely a political subdivision of the state, created for the con-
venient dispatch of public business. In the absence of constitu-
tional limitations, the legislature may create or abolish a district
or change or rearrange the boundaries of an existing district,
and by the same token it may create joint districts from terri-
tory lying in adjacent counties."

The legislature has by section 1024 provided that upon
meeting of the requirements of that section, districts may be
created by the county superintendent with the right of appeal
to the board of county commissioners, whose action is final. By
this Act certain discretion is lodged in these officers after the
provisions of the statute are satisfied. The statute has been com-
plied with here in so far as the necessary jurisdictional facts
are concerned. The discretion of these officers was invoked and
the discretion has been exercised. The legislature might have
required these officers to be guided by any fixed rules which it
saw fit to provide, but it has left all of these questions to the
good judgment of these officers. This was within the power of
the legislature.

It is contended that the hearing before the county superin-
tendents was ineffectual, in that it does not appear that
sworn testimony was received at that time. It does not appear
that any sworn testimony was offered which these officers refused
to hear. This court has held that where a board of county com-
missioners was passing upon a petition they might resort to
any competent source of information available, perhaps includ-
ing the personal information of the members. (*State ex rel.
Lang* v. *Furnish*, 48 Mont. 28, 134 Pac. 297; *State ex rel. Fad-
ness* v. *Eie*, 53 Mont. 138, 162 Pac. 164.) While the term "hear-

ing'' would include the reception of testimony, if any was offered (*Grant* v. *Michaels,* supra; *Ellis* v. *Town of LaSalle,* 72 Colo. 244, 211 Pac. 104), it is not indispensable where the facts are presented in some other competent manner. (*Strahan* v. *Attala County,* 91 Miss. 529, 44 So. 857.)

The order appealed from created the district. The appeal has been heard in the manner provided by law and resulted in no change in the former order; hence the order creating the new district stands as a valid, subsisting order, and the respondents should have proceeded to consider the budget, act on it in the manner provided by law, and levy a proper tax or taxes as provided by law.

It is suggested that, since the time has now expired within which the statutes command the performance of the duties here in question, mandate will no longer lie. This court in the case of *State ex rel. Arthurs* v. *Board of County Commrs.,* supra, . where a board of county commissioners had failed to perform a duty within time, made a similar contention, said: ''This duty is absolute—one resulting from the office and specifically enjoined by law. To say that the courts are helpless to compel performance of such a duty, merely because the time within which the duty should have been performed has elapsed, is tantamount to holding that a public official, by delaying action until the time designated by law for action has expired, may defeat the will of the people as expressed by the legislature, and that there is not any redress for those who are injured by such nonaction. Cases may arise where the courts are not able to render any adequate assistance, but this is not one of them. The board will not be heard to say that it is too late to do that which it ought to have done at the proper time, or to take advantage of its own mistake to deprive these counter-petitioners of a right which the law secures to them.''

It should be kept in mind that we are dealing with a controversy arising from the acts of county officials done outside the powers such officials are ordinarily authorized to exercise. In legal effect, county commissioners vested with appellate power in the matter of the creation of joint school districts

constitute a special statutory board, vested with certain powers extra-jurisdictional in nature and entirely distinct from the powers such boards ordinarily exercise, and as separate therefrom as though the personnel of the board were composed of persons having no other part in county affairs. It would have been clearly within the scope of legislative powers had a special commission been created to perform the duties imposed upon the county boards in the premises, but it was neither economical nor expedient to do so. Hence statutory regulations of county boards have no application in this matter unless they relate to joint school districts.

In construing statutes it is the duty of courts to give effect to the will of the legislature, if possible, not to defeat that will. By section 1035, Revised Codes, the intent to provide a means of creating joint school districts is clearly obvious. The procedure is not fully nor clearly provided, but when an official duty is imposed and no mode of exercise is prescribed, the one who is required to perform such duty may adopt any mode reasonably suitable to carry the duty imposed into effect. (*Simpson* v. *Silver Bow County,* 87 Mont. 83, 285 Pac. 195.)

The boards of county commissioners of Lake and Missoula counties met jointly, as heretofore stated, and that, it is contended in substance, rendered their action illegal for the reason that it is said the two boards must act concurrently, and to so act they must meet in their respective jurisdictions. In support of this view the following decisions are cited: *State of Rhode Island* v. *Palmer,* 253 U. S. 350, 40 Sup. Ct. 588, 64 L. Ed. 946, and *State* v. *Ceriani,* 96 Conn. 130, 113 Atl. 316. Neither of these decisions discusses ''concurrent action.'' ''Concurrent power'' was the subject there defined, and the definition was given in outlining the respective powers of the federal and state governments under the Federal Prohibition Act (41 Stat. 305), a question that has no relation to the duties imposed upon county boards by sections 1035 and 1024 of our Codes.

Webster defines ''concurrent powers'' as, ''political powers exercised independently in the same field of legislation by both

federal and state governments. They exist especially in taxation, borrowing, and prohibition." The same authority defines "concurrent" as united in agreement.

And even if the legislature intended to make any such fine-spun distinction as is contended, which we do not concede, the respondents and interveners would not be injured, as it very clearly appears that the result would have been precisely the same if the respective boards had met "concurrently," "jointly" or in any other manner, and one who is not injured will not be heard to complain.

The case of *Leonard* v. *Benton County*, 194 Iowa, 1250, 191 N. W. 141, 144, is also referred to. The controversy there arose over the construction of the following statute: "The establishment, vacation or alteration of a road, either along or across a county line, may be effected by the concurrent action of the respective boards of supervisors in the manner above prescribed. The commissioners in such cases must act in concert, and the road shall not be established, vacated or altered in either county until it is so ordered in both." (Code Iowa 1897, sec. 1510.) The court there held: "We have no statute authorizing such session as was held at Brandon, pertaining to road matters. In our statutes pertaining to the establishment of a drainage district proposed to be located in two or more counties, provision is made for a joint session of the boards of the several counties, and it is provided that notice be given to all parties interested of the time and place of such joint session. But in the establishment of a highway touching two counties, as in the instant case, we have no statute providing for a joint session of the boards to pass upon the establishment of a highway." Such is not the situation that confronts us. For the reason that in this jurisdiction, as heretofore stated, when a duty is imposed and no mode prescribed, the officials may adopt such mode as is suitable.

The fact is that the determinative question in the case at bar is the very simple one of what confronts this court when the officials who have the right to review the decisions of some board or commission can arrive at no conclusion by reason of being

equally divided. When such a matter is brought here for conclusion, as in the instant case, where the decision of the county superintendents was appealed from, we, in accordance with the established rule, must hold that the decision of the superintendents appealed from shall stand affirmed. If a contrary rule maintains in any other jurisdiction, it has not come to our attention.

This matter has been pending on hearing and rehearing in this court for more than six months, and the school year of 1938–39 is well advanced, and it has been suggested that to issue the writ now would be too late. The primary purpose of this proceeding was to determine whether or not School District No. 8 had been legally created. True, the test arises on the petition for the writ to compel the board to act on the budget, but the respondent board by its refusal in the first instance to proceed according to law is responsible for the existing situation and may not be heard to complain. Furthermore, under the Budget Law, the approval of a budget is required not merely for the purpose of furnishing a basis for a levy of taxes, but its approval is a necessary prerequisite to the issuance of warrants as disclosed by section 1019.14, Revised Codes. Since District No. 8 is a valid district, and required by law to conduct school and incur district expenses, and since it is entitled to receive and expend other funds than those derived from district levies, such as the funds received from the State Interest and Income Fund, the Forest Service Fund, the Teachers Unit Fund, the Transportation Fund, and all funds properly entered under items 1 and 4 of the form prescribed by section 1019.9, it is apparent that the district is at this time entitled to have its budget approved so that its expenditures of such funds may conform to the requirements of sections 1019.14 and 1019.22, Revised Codes, the Budget Law.

Again, we know of no reason why the revenues which the new school district was entitled to have collected on the property within the boundaries of that district and which we think necessarily must have been collected under the old régime, cannot now be determined and the balance paid into the treas-

ury for the benefit of District No. 8 for the balance of the school year, and upon that being done it may be accepted as compliance with the writ. Relators had an absolute right to have respondents act. Let the writ issue.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICE STEWART concur.

MR. JUSTICE ANGSTMAN, Dissenting:

I think the foregoing opinion is demonstrably unsound. It must be conceded that under our statutes before a joint school district can be created, there must be *concurrent* action on the part of the county superintendents of the several counties affected. That is the plain language of section 1035, Revised Codes. Also, on appeal to the county commissioners of the several counties *concurrent* action of the several boards of county commissioners is required. (Sec. 1037.2.) Here the facts are that on the appeal the board of county commissioners of Missoula county voted unanimously for the creation of the new district, and the Lake county board voted unanimously against it. Concurrent action does not mean joint action. Compare *State of Rhode Island* v. *Palmer*, 253 U. S. 350, 40 Sup. Ct. 588, 64 L. Ed. 946; *State* v. *Ceriani*, 96 Conn. 130, 113 Atl. 316. It means action first by the county superintendents, and then by the boards of county commissioners on appeal sitting separately in their respective counties. Concurrent action, as used in the statute, means action of the two boards sitting separately and agreeing to the same result. (*Leonard* v. *Benton County*, 194 Iowa, 1250, 191 N. W. 141.)

What does each county superintendent consider when the petition is heard? The county superintendent of Missoula county determines whether the creation of the new district will be advantageous and to the best interests of the people residing in that part of the district situated in Missoula county. She does not speak for the people residing in the portion of the district lying in Lake county, and the legislature could not authorize her to speak for them without to that extent destroying our

system of local self-government. But the legislature has not attempted to authorize the county superintendent of one county to speak for the people residing in another.

When the petition is considered by the county superintendent of Lake county, an entirely different question is presented from that considered by the county superintendent of Missoula county. The county superintendent of Lake county determines whether the new district will be beneficial and to the best interests of the people residing in that part of the district situated in Lake county, and none other.

And so it is on appeal. Each board speaks only for the territory embraced within its county. It is analogous to the question which arose when Congress and the states were given concurrent jurisdiction to enforce prohibition. The jurisdiction of each state was still confined within its territorial limits. (*Ex parte Gilmore,* 88 Tex. Cr. 529, 228 S. W. 199.) The effect of the favorable vote by the county commissioners of Missoula county simply gave consent to the division of the old district and the creation of a new district so far as the land situated in Missoula county was concerned. It could not speak for the territory situated in Lake county.

The county commissioners of Lake county, while perhaps willing to agree that the new district would be beneficial to the people of Missoula county, found it was not advantageous to the people of Lake county, and therefore voted against the proposition.

Whether the hearing before the board on appeal is *de novo* as held in *State ex rel. Hall* v. *Peterson,* 55 Mont. 355, 177 Pac. 245, or whether the hearing is in the nature of a review, as my associates seem to hold, is immaterial. If it is *de novo,* and if the board hears the petition for the creation of the district as the statute provides, then clearly the board in Lake county has voted against the creation of the district. If the board simply reviews the action of the county superintendent, then in the instant case the board of commissioners of Lake county simply reviews the action of the county superintendent of Lake county, and not the action of the county superintendent of Missoula

county. It overruled the action of the county superintendent of Lake county. In either case, under section 1024, Revised Codes, the board's decision, so far as Lake county property is concerned, is final.

The proposed new district has not the favorable concurrent action of the boards of county commissioners of the two counties affected, and hence does not exist as a new district. The contention that on the appeal to the county boards, there was a tie vote, resulting in no action, cannot be sustained here. That would have been true had the statute provided for a joint hearing. (Compare *Schumaker* v. *Edington,* 152 Iowa, 596, 132 N. W. 966.) At this point it is interesting to note that the recent legislative assembly had before it House Bill No. 241, designed to make the action of the two boards *joint* instead of *concurrent* as the statute now provides, but the legislature did not look with favor upon the proposed change and hence defeated the bill.

The resulting effect of a tie vote, whatever it may be, has application only in a situation where there is an appeal to a single tribunal authorized to hear the appeal, and where each member of the tribunal considers the same question. Here, it is true that each board considered the same question in a sense, i. e., it considered the question whether a new district should be created, but each board in arriving at its conclusion could weigh its effect upon only a portion of the entire territory affected. That is the reason why the legislature required concurrent rather than joint action. The county commissioners of Lake county have definitely spoken on the only question concerning which they are or were authorized to speak, namely; whether they should consent, on behalf of those living on property affected and situated in Lake county, to the creation of the proposed new district. That board has answered the question in the negative. There is lacking the essential requirement of concurrent action on the part of the two boards.

The legislature has definitely provided that the judgment of the board of county commissioners shall take precedence over that of the county superintendent. To hold that a new district

134

has been created here would be to give greater effect to the order of the county superintendent than to the decision of the board of county commissioners as to the people residing on the property affected and situated in Lake county, contrary to the express terms of the statute.

My associates rely upon the case of *Weasel Head* v. *Armstrong*, 99 Mont. 364, 43 Pac. (2d) 243. The most that that case held was that the order of the county superintendent creating the district is merely suspended on appeal. Conceding that such is the case, it lost its vitality when the Lake county board, considering the identical question before the county superintendent, reached a contrary conclusion. The board's decision under the statute was final.

I attach no importance to the fact that the two boards here actually met jointly and not separately. The decision of the Lake county board, though sitting jointly with the Missoula county board, was just as efficacious in registering disapproval of the new district as if made while sitting separately. The method of voting did not and could not have influenced the result. (*Schumaker* v. *Edington, supra.*)

The proposed new district, whatever its status pending the appeal, was lifeless when the Lake county board decided against its creation. To me the question is as simple and the result as certain, as the arithmetical statement that three from three leaves nothing. The fallacy of the conclusion arrived at by my associates rests mainly in the fact that they fail to distinguish between *concurrent* and *joint* action. The point may perhaps better be illustrated by a supposititious case. Let us say that three counties are involved and the only action taken was by the county superintendents. Two of them favored the new district; the third did not. There was no appeal. My associates would say that there was a new district because a majority of the three favored it. My conclusion would be that there would be in that situation no new district as proposed, because it lacked concurrent action on the part of the three county superintendents of the three counties affected.

Furthermore, I think my associates have reached the wrong conclusion even though we assume that concurrent action means joint action. Under section 1024, Revised Codes, the petition for the creation of a new district is first made to the county superintendent. If no protest be filed, then the county superintendent, after hearing, shall "make an order establishing the new district and describing the boundaries thereof, or make an order denying such petition." It then provides than an appeal may be taken to the board of county commissioners from either order of the county superintendent. It provides that "upon the hearing of said matter by the board of county commissioners, a decision shall be rendered which shall be final." It provides that upon the appeal being perfected, the county superintendent shall transmit to the board of county commissioners and file in the office of the county clerk "the notice of appeal and all petitions, plats and papers in his possession pertaining to the petition for the creation of such new school district." The county clerk is required to give notice of hearing, which notice shall be "to the effect that the board of county commissioners will  *  *  * finally hear and determine said appeal and said *petition for the creation of such new district.*"

It is my opinion that when an appeal from the superintendent's order was made to the boards of county commissioners the matter stood for trial *de novo* before the county commissioners on the issue of whether a new school district should be created, and that the order of the county superintendents had by the appeal spent its force and in effect was wiped out by the appeal. This question, under a statute providing for an appeal in practically the same language as is found in section 1024, came before this court in *State ex rel. Hall* v. *Peterson,* 55 Mont. 355, 177 Pac. 245, 248. The only substantial difference between the statutes involved in that case and the present statutes is that under the statutes in the *Hall Case* the petition was first presented to the board of trustees of the school district and successive appeals were provided for, first to the county superintendent, and then to the county commissioners.

In speaking of the contention that the board of county commissioners did not have authority to create new school districts, the court in the *Hall Case* said: "But this denial of power is refuted by the section itself. Upon appeal under section 405 [Chap. 76, Laws of 1913] from the decision of the board of trustees to the county superintendent of schools, the latter does not act as a court or judge sitting for the review of errors, but takes the matter presented by the petition and tries it *de novo* upon the merits; the board of county commissioners, in considering an appeal from the county superintendent of schools, likewise tries and determines the matter *de novo* upon the merits, and not as a court or tribunal for the correction of errors. Upon such appeal, plenary power is thus vested in the board of county commissioners to create a new school district, and its decision is declared to be final. The sole question to be decided by each tribunal or officer is: 'Shall the proposed new district be created?'" To the same effect are *Carpenter* v. *Leatherman,* 117 Ark. 531, 176 S. W. 113; *Munn* v. *School Tp. of Soap Creek,* 110 Iowa, 652, 82 N. W. 323; *Stephens* v. *School District,* 104 Ark. 145, 148 S. W. 504.

If the decision in the *Hall Case* is still the law of this state, then District No. 8 has not been legally created even though the hearing on appeal is to be a joint hearing. When the order of the county superintendents was appealed from, the hearing before the county commissioners was *de novo* and the matter stood before them for trial anew and not for the purpose of review only.

Contention is made that the rule in the *Hall Case* has been changed by later opinions. In *Grant* v. *Michaels,* 94 Mont. 452, 23 Pac. (2d) 266, 270, this court made reference to the *Hall Case* and said: "In *State ex rel. Hall* v. *Peterson,* supra, this court declared that, under section 405 of Chapter 76, Laws of 1913, the board of county commissioners on appeal was 'vested with plenary power' to create a school district. The law as it then existed merely declared that an appeal might be taken to the board of county commissioners 'whose decision shall be final;' it contained no suggestion of a hearing. Whether or not

the Hall decision would justify arbitrary action on the part of the board is not now of any consequence, as the present law (Chapter 138, Laws of 1927) provides that, upon transmission of the records and notice of appeal to the county clerk, the latter 'shall, forthwith * * * give notice to all parties interested * * * that the Board of County Commissioners will (at a designated time and place) finally hear and determine said appeal and said petition,' and 'upon the hearing * * * a decision shall be rendered which shall be final.' '' This court then held that no hearing as contemplated by the statute was held by the county commissioners, and, therefore, that the order was a nullity. In effect, since no hearing was held by the county commissioners, and since the time .for the hearing as provided by statute had long since expired, the case reaches the same conclusion as if no appeal had been taken to the county commissioners from the county superintendent's order.

The case of *Weasel Head* v. *Armstrong,* supra, is relied upon by my associates, in which it was held that the district (being the same one involved in *Grant* v. *Michaels,* supra) was created as of the date of the county superintendent's order. Since the county commissioners held no hearing as required by statute (*Grant* v. *Michaels,* supra), and since the time for holding a hearing under the statute had expired, the case stood as if no appeal had been taken to the county commissioners, in which case, and for that reason, the conclusion in the *Armstrong · Case* was correct. In the *Armstrong Case* this statement was made: ''A new school district can only be 'created' by a county superintendent of schools on compliance with the provisions of section 1024, Rev. Codes 1921, as amended by Chapter 138 of the Laws of 1927 (section 1).'' This statement is obviously incorrect. In other words, if under section 1024 the county superintendent denies the petition for the creation of a new district, then on appeal to the county commissioners that board has the clear right under the statute upon a proper hearing to create the new district notwithstanding negative action by the county superintendent. If that were not so, there would be no purpose in providing for an appeal. In such a situa-

tion the county superintendent's order is not merely suspended pending the appeal; it is entirely abrogated by the appeal, and the original question comes before the county commissioners, whose decision shall be final. The statute, section 1024, is clear that what the commissioners hear is "the petition for the creation of such new district."

My associates rely upon the *Weasel Head Case* as authority for the proposition that the appeal merely suspends the order of the county superintendent. In the *Weasel Head Case* that statement was made by way of *dictum,* but it was not intended to be declared as a principle of law in this jurisdiction, as will appear from the language immediately following, wherein it was said: "This rule is salutary, and might well be enacted into law in this state; but, even if we were to hold that the statute justified a holding that the order creating the district would not be effective until the time for appeal had expired or an appeal had been taken and determined, such holding would not solve the problem before us." Hence it is clear that the *Weasel Head Case* did not decide the point relied upon by my associates. If it did, there would have been no occasion for the suggestion that the rule "might well be enacted into law in this state."

Since an appeal was taken from the order of the county superintendents, that order was nullified by the appeal and the entire matter was submitted on appeal to the concurrent action of the county commissioners of Missoula and Lake counties. The question before them was, "Shall a new district be created?" The situation is analogous to that of an appeal from a justice court judgment. The rule is well established that such an appeal nullifies the judgment appealed from. The late Chief Justice Brantly in *Hosoda* v. *Neville*, 45 Mont. 310, 123 Pac. 20, 21, in speaking for the court on the effect of an appeal from a justice court judgment in a criminal case, said: "The result of the appeal was to abrogate the justice's judgment." In *Bullard* v. *McArdle*, 98 Cal. 355, 33 Pac. 193, 194, 35 Am. St. Rep. 176, the court in speaking of an appeal from a justice court judgment, said: "By perfecting the appeal

from the justice's court, the case was entirely removed from that court, and only the superior court had thereafter jurisdiction in the matter. The judgment in the justice's court was not merely suspended, but by the removal of the record was vacated and set aside. (*Thornton* v. *Mahoney*, 24 Cal. 569; *People* v. *Treadwell*, 66 Cal. 400, 5 Pac. 686.) When the effect of an appeal is to transfer the entire record to the appellate court, and to cause the action to be retried in that court, as if originally brought therein, as is the case when appeals are taken from a justice's court upon questions of law and fact, the judgment appealed from is completely annulled, and is not thereafter available for any purpose.''

In *Bank of North America* v. *Wheeler*, 28 Conn. 433, 73 Am. Dec. 683, the court said: ''The effect of that appeal depends upon the character of the jurisdiction of that court. If, by the laws of New York, a case carried before it by appeal is to be retried by it as upon original process in that court, and it has jurisdiction to settle the controversy by a judgment of its own, and to enforce that judgment by its own process, the appeal, like an appeal under our statutes from a justice of the peace to the superior court, would vacate the judgment of the inferior tribunal. (*Curtis* v. *Beardsley*, 15 Conn. 518.)'' To the same general effect is *Campbell* v. *Howard*, 5 Mass. 376.

The effect of the appeal under the statute here was to bring the petition before a different tribunal for trial anew, i. e., as if no other proceeding had been taken. (*School District* v. *Asher School District*, 168 Okl. 282, 32 Pac. (2d) 897.) The burden of proof before the boards of county commissioners rested with petitioners for the creation of the new district. (*Woolsey* v. *Nelson*, 43 Okl. 97, 141 Pac. 436.) They failed to sustain that burden by satisfying that tribunal (if it be considered as one tribunal sitting jointly) that the petition should be granted and the new district created. Their decision under the express terms of the statute was final. Hence, it seems to me, it logically follows that no new district was created. To hold that one was created is to nullify that part of the statute which makes the decision of the county commissioners superior

to that of the county superintendent, and amends the statute by judicial construction by making the county superintendent's order final unless set aside on appeal. I agree emphatically with the statement in the majority opinion that it is the duty of the courts to give effect to the will of the legislature and not to defeat that will.

I express no opinion on the other questions treated in the majority opinion, but rest my disagreement with the majority upon what I think is the most flagrant error. I may say, in passing, that I have no quarrel with the case of *State ex rel. Arthurs* v. *Board of County Commrs.*, 44 Mont. 51, 118 Pac. 804, announcing the rule that the performance of a duty resulting from an office and especially enjoined by law, may be compelled by mandamus even though the time within which it should have been performed has elapsed. To apply the rule here will accomplish amazing results. The order of the county superintendents purporting to create District No. 8, and which, according to my associates, accomplished the creation of the district, was made on February 3, 1938. The application for the writ here sought was filed on July 29, 1938. It seeks a mandatory order commanding the respondents to consider the 1938 budget and to levy taxes to provide for the budget requirements for that year. As I understand the majority opinion, it requires the respondents at this time, March, 1939, to levy taxes one-half of which should have been due and payable on November 30, 1938, and which evidently have ever since been delinquent. Whether that can be done at this late hour, I express no opinion.

MR. JUSTICE ERICKSON:

I concur in the above dissenting opinion of MR. JUSTICE ANGSTMAN.