READ ET AL., APPELLANTS, v. STEPHENS ET AL. COUNTY COM'RS., RESPONDENTS.

No. 8812.

Submitted April 8, 1948.    Decided May 17, 1948.

193 Pac. (2d) 626.

Messrs. Burns & Thomas of Chinook, for appellants. Mr. Harry Burns argued the cause orally.

Mr. Jess L. Angstman, of Havre, for respondents. Mr. Angstman argued the cause orally.

MR. JUSTICE GIBSON delivered the opinion of the court.

July 22, 1946, the county superintendent of schools of Blaine county made an order declaring school district 34 of that county to be an abandoned district. This action was taken pursuant to the authority of section 970, Revised Codes of Montana 1935, as amended by Chapter 168, Session Laws of 1943. In the order the county superintendent transferred to school district 67 of that county nine sections of land that had been embraced in the abandoned district and placed the remainder and larger portion of the territory thereof in school district No. 15. Following this, on August 30, 1946, a petition of resident taxpayers and registered electors of that portion of school district 15 formerly embraced in school district 34, was filed with and addressed to the county superintendent of schools, asking that their lands in said territory be transferred from school district 15 to school district 67. A hearing was

had thereon, after due notice given, and on October 9, 1946, the petition was denied by the county superintendent. From this order of denial the petitioners appealed to the board of county commissioners of Blaine county and a hearing upon the appeal was held by the board on November 30, 1946, taken under advisement, and by decision of the board on January 6, 1947, the order of the county superintendent of schools denying the transfer of petitioners' lands to district 67 was set aside, and the territory described in the petition was ordered taken from school district 15 and placed within school district 67.

This action was then brought by appellants, who are resident taxpayers and electors of school district 15 and parents of school children within said district, to set aside the order of the board of county commissioners and to restrain the enforcement thereof pending the action. This, upon the ground that the board's action was arbitrary and not supported by the evidence.

The trial of the action in the district court resulted in findings in favor of the respondents, that the board did not act arbitrarily or in disregard of the evidence, and that evidence was adduced on the appeal to justify the board's decision and order. Judgment that the decision and order of the board of county commissioners was valid and lawful was by the court made and entered, and the temporary restraining order enjoining defendants from enforcing said order of the board was dissolved. This appeal is from said judgment.

A transcript of the proceedings before the board of county commissioners was received in evidence in the district court, from which it appears that testimony of witnesses both for and against the petition for transfer of the territory, and evidence as to the financial condition of the school districts involved was received. The evidence before the board showed that at the time of the hearing there were no children of school age within the area sought to be transferred, although shortly prior there were three children of school age in the area; that

in that portion of district 15 in which appellants reside there were five children of school age; that before the territory from abandoned district 34 was transferred to district 15, one school was maintained in the latter district, but after the addition of the territory to district 15, it maintained two schools, the second school near where appellants reside. These schools are about eight miles apart but neither of them are within the territory gained by district 15 from the abandoned district 34. This added territory is the area which the residents, taxpayers and electors therein petitioned for transfer to district 67. A range of mountains or high divide separates this area sought to be transferred to district 67 from the rest of district 15 and from both schools of the latter district. This high divide renders direct travel between the area formerly in district 34 and the schools in district 15 impossible or at least impracticable. Persons living in that area in order to reach school in district 15 must travel across a part of district 67 and past a school in district 67 an additional ten miles to reach a school in district 15. This area sought to be transferred is within the same valley in which district 67 lies and in which is situated the school in that district, and travel and communication between the area and the school in district 67 is usual and practical.

At the time of the hearing before the board November 30, 1946, the second school in district 15 was closed because of bad weather.

The evidence further showed that the taxable valuation, that is to say the percentage of the assessed valuation upon which taxes are levied and computed, of district 15 before the addition thereto of the territory from district 34, was $122,155; that the taxable valuation of district No. 67 was $97,994; that after the territory from abandoned district 34 was added to district 15, the taxable valuation of that district was $199,892. Following the abandonment of district 34 and the transfer of territory therefrom, a transfer of $1,002 of the funds of the abandoned district 34 was made to the credit of the school fund of district 15. Other matters pertaining to the financial

requirements of the schools, and to the benefit to the area sought to be transferred to be derived by it from the transfer, and to the loss in revenue to be suffered by district 15 by virtue of transfer, were before the board of commissioners in evidence on the hearing.

The contention of those opposing the transfer of the territory, as shown by the transcript of the record of the hearing before the board, was that the only matter, or at least controlling factor, the "educational aspect," as it was termed, to be considered by the board in acting upon the petition was what would best accommodate the five school children who might attend the second school in district 15 that was opened after that district acquired the territory and funds from abandoned district 34.

It was contended that the transfer would reduce the revenues of district 15 to a point too low to maintain two schools therein and that the second school, opened after the addition to the district of the territory from abandoned district 34 and the receipt of the windfall of $1,002 from the funds thereof, could not be maintained. But it is held that territory may be detached from one school district and placed in another in the discretion of the board to which the power is delegated by the legislature, even though the district losing the territory may be crippled financially, if the action taken is not arbitrary or such as to constitute a legal fraud. State ex rel. District 8 v. Lensman, 108 Mont. 118, 126, 88 Pac. (2d) 63; In re Consolidated School District No. 16, 179 Minn. 445, 229 N. W. 585.

The power exercised by the administrative boards or officials in changing the boundaries of school districts is usually termed legislative power (In re Consolidated School District No. 16, supra; 47 Am. Jur. 311) although it is said in Grant v. Michaels, 94 Mont. 452, 23 Pac. (2d) 266, that the board of county commissioners in hearing an appeal from the county superintendent's order acts in a quasi-judicial capacity. Whatever the nature of the power, however, it is certain that

if it is exercised within the limits and restrictions of the statute that delegates or grants it, and in the discretion of the board exercising it, it is not subject to interference by the courts. School District No. 3 v. Callahan, 237 Wis. 560, 297 N. W. 407, 135 A. L. R. 1081. This power of administrative officers to change the boundaries of school districts, and their discretion in exercising such power, depends of course upon the language of the statute. The Montana legislature has provided that in changing the boundaries of a district or districts, no territory shall be taken that is within three miles of an established school in the district from which it is taken, and that the taxable valuation remaining in the district from which the territory is taken, shall not be reduced to less than $75,000. Sec. 1024, Rev. Codes of Montana 1935, as amended by Chapter 61, Session Laws 1943.

Aside from these limitations and restrictions, the legislature has delegated to the county superintendent of schools and to the board of county commissioners a full measure of discretionary power in creating and changing the boundaries of school districts. The language of the statute measures the extent of this power.

The statute provides that upon the hearing of a petition for transfer of territory from one school district to another, the county superintendent of schools "if he deem it advisable and for the best interest of the territory proposed to be transferred or included, he shall grant said petition and make an order fixing the boundaries of the district so changed, which order shall be final, unless an appeal be taken to the board of county commissioners of the county wherein such districts are located." Sec. 1024, Rev. Codes 1935, as amended.

When an appeal is taken to the board of county commissioners from the order and decision of the county superintendent of schools, this power and discretion is vested in the board, and upon hearing of the appeal, the statute declares that "the decision of said board shall be final."

This language of the statute does not give the board power

■ to act arbitrarily, or without a hearing, or in disregard of the evidence of matters which by the terms of the statute, it shall consider. Grant v. Michaels, supra. It simply means that, if after a hearing, where the parties in interest are permitted to present the facts and evidence of their contentions properly to be considered by the board in exercising the power vested in it by the legislature, it exercises that power within the limits fixed by the statute, not arbitrarily, or fraudulently, but within its sound discretion, the courts may not interfere. School District v. Callahan, supra. What matters may the board consider in exercising the power here involved? The statute delegating the power broadly answers the question.

The language used in the statute, "if he deem it advisable" ■ opens a wide field of matters to be considered in hearing the petition for change of boundaries of school districts. The financial condition of the districts, the means and convenience of communication therein, the number and places of residence of the children therein, their ages, and other matters that show the change to be "advisable," or otherwise, may be considered. The language, "and for the best interest of the territory proposed to be transferred or included," following the language first quoted, calls attention to and declares a matter which, if not deemed of paramount importance by the legislature, is surely one of the subjects to be weighed by the board in determining whether the transfer of the territory is "advisable."

The evidence before the board advised it of the foregoing, as well as other matters properly to be considered by it in hearing the application for transfer of the territory involved.

Under the authorities generally, and under the express language of the statute, section 1024, Revised Codes of 1935, as amended by Chapter 61, Session Laws of 1943, the petition for transfer of the described territory in district 15 to district 67 was an application addressed to the sound discretion of the board in the hearing upon the appeal from the decision of the county superintendent of schools.

The district court held that there was substantial evidence ██ before the court to justify the order of transfer of territory. The record so shows, and sustains the findings of the court that the board of county commissioners did not act arbitrarily, or in disregard of the evidence, but did act without bias or prejudice and in the due exercise of its sound discretion.

The judgment and decree of the district court is affirmed.

Mr. Chief Justice Adair and Associate Justices Choate, Angstman and Metcalf, concur.