No. 83-219

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

HELEN FOSTER NEEL,

            Plaintiff and Appellant,

    -vs-

FIRST FEDERAL SAVINGS AND LOAN ASSOC.
OF GREAT FALLS, a Federal Assoc.,

            Defendant and Respondent.

---

APPEAL FROM:  District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable H. William Coder, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Regnier & Lewis; Stephen D. Roberts argued, Great
        Falls, Montana

    For Respondent:

        Dzivi, Conklin & Nybo; E. Lee LeVeque and William
        Conklin argued, Great Falls, Montana

---

                    Submitted:  October 28, 1983

                    Decided:  January 5, 1984

Filed: JAN 5 - 1984

*Ethel M. Harrison*
_____
            Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is from the District Court's summary judgment that appellant's homestead declaration is invalid and that the amendments to Section 70-32-104(2), MCA are not to be retroactively applied. The question posed is whether amendments raising the exemption amount should be applied to debts incurred before the effective date of the amendment, and the constitutionality of such an application. We reverse.

The issues in this case are:

(1) Was the property description in appellant's homestead declaration sufficient to create a valid homestead exemption?

(2) Must the amendment to Section 70-32-104(2), MCA, raising the exemption amount to $40,000 be retroactively applied to all who filed homestead declarations prior to forced sales of their homesteads, without reference to when the debts were incurred?

(3) If the amendment is applied retroactively, does that application violate the Contract Clause of the U.S. and Montana Constitutions?

(4) Is a married person entitled to the full homestead exemption on his/her individual interest in the homestead property?

The material facts in this case are not in dispute and were stipulated to by the parties in the District Court. On July 25, 1979, appellant and Louise Manzer executed and delivered to respondent a mortgage note to secure a loan used to buy property at 412-422 Fourth Street North in Great

-2-

Falls, Montana. The loan was secured only by the mortgage to that property, and respondent did not inquire of, or request appellant's personal residence be used as additional collateral for the loan. Appellant's husband did not participate in obtaining the loan, or sign any of the documents, nor was their personal residence put up as collateral for the loan.

On July 21, 1980, appellant and her husband executed and recorded a declaration of homestead, as husband and wife, on their personal residence located at 402 Fifth Avenue North, in Great Falls. The property description on that declaration described the property as, "Lot 1; Block 191; First Addition to Great Falls, Montana." (Emphasis added.) The correct legal description of the property is, "Lot 1; Block 191; town or townsite, Great Falls, Montana." (Emphasis added.) As of September 1, 1980, the Ownership Book of Cascade County listed the homestead declaration with the correct legal description of the property. There is only one Block 191 in the official plat of Great Falls. Respondent's loan officer who negotiated the loan had actual knowledge prior to approval of the loan that appellant and her husband owned and occupied as their residence, the property at 402 Fifth Avenue North in Great Falls.

A foreclosure action on the mortgage was filed by respondent on October 17, 1980. Judgment was entered in respondent's favor on June 29, 1981, and the mortgaged property was ordered sold. The property was sold for less than the loan amount, and respondent recovered a deficiency judgment in the amount of $44,344.95, plus costs and interest.

An execution writ was issued against appellant on September 9, 1981, and was levied the following day on her residence at 402 Fifth Avenue North. Proper notice of the sale of appellant's home was given, and on September 28, 1981, respondent filed a "Petition to Appoint Appraisers to Appraise Homestead after Levy of Execution Pursuant to Section 70-32-203, MCA."

On October 2, 1981, appellant filed this action seeking a declaratory judgment on the effect of several amendments to the Montana Homestead statutes which became effective October 1, 1981. The amendments increased the exemption amount from $20,000 to $40,000, and allowed the homestead declaration to be filed after judgment had been entered against the declarant. Appellant sought a judgment declaring that the amount of exemptions claimed before the effective date of the amendments, automatically increased to $40,000; and that the amendment allowing a declarant to file his homestead declaration after judgment has been obtained exempts that homestead from forced sale if the declaration is filed before such forced sale. On October 5, 1981, the District Court granted a stay of the execution proceedings pending a decision on the declaratory judgment action.

The case was submitted on cross motions for summary judgment and briefs were filed by both parties. In the meantime, appellant filed a new homestead declaration on October 1, 1982, containing a corrected legal description. Judgment was entered on March 22, 1983, wherein the District Court, per Judge H. William Coder, found appellant's original homestead declaration invalid because of the misdescription, and that the new declaration did not invoke

the amendments because the amendment was effective after entry of the deficiency judgment. From this judgment the appeal is taken.

The first issue is whether the misdescription of plaintiff's homestead property in the July 21, 1980, declaration of homestead renders the declaration invalid. The validity of a homestead declaration with an incorrect or an inadequate legal description is an issue of first impression in this Court. The respondent relies heavily upon McCarthy v. Kelley (1922), 63 Mont. 233, 206 P. 782, and Yerrick v. Higgins (1899), 22 Mont. 502, 57 P. 95. In McCarthy, supra, the claimant attempted to claim her homestead on an amount of real estate considerably in excess of that allowed by the statue and this Court found the declaration of homestead void. In Yerrick, supra, the Court disallowed an exemption on the plaintiff's property in which he attempted to exempt some 2,100 square-feet in excess of the one fourth of an acre allowed by law. That exemption was not allowed even though the Court acknowledged that the excess could be taken off the east side of the lot without disturbing any of the dwellings. In each of these cases the reasoning was that the claimants had attempted to exempt more property than was allowed by law. There were no statutory provisions for removing the excess from the claimed amount, therefore it could not be determined which property was being claimed and the declarations were held invalid. In addition respondent cites Esten v. Cheek (9th.Cir.1958), 254 F.2d 667, as a case on all fours with this case. That particular case involved a bankruptcy where the claimant incorrectly described her property as Lot 204,

Tract 5069, but in her declaration of bankruptcy, she declared homestead property located at Lot 104, Tract 5069. The court in its opinion admitted that the declaration was faulty only as to one point, and otherwise conformed with all the homestead laws of California. It reversed a bankruptcy judge who had allowed the exemption holding that no reformation was possible.

Appellant cites the Montana cases, Oregon Mortgage Co. v. Dunbar (1930), 87 Mont. 603, 289 P. 559; Williams v. Sorenson (1938), 106 Mont. 122, 75 P.2d 784; and Howe v. Messimer (1929), 84 Mont. 304, 275 P. 281. Dunbar, supra, dealt with a homestead declaration on ten more acres than were owned by the claimant, but less than the statutory amount. This Court upheld the validity of the homestead, reasoning that the Yerrick and McCarthy rationale did not apply. There could be no mistake as to what was claimed by the declarant.

We have carefully examined the cases cited above and other cases in the briefs and find that the weight of authority on this issue is on appellant's side. As this Court noted in State v. Lensman (1939), 108 Mont. 118, 88 P.2d 63, "It is not every error in a description which will invalidate a proceeding or conveyance." 108 Mont. at 125, 88 P.2d at 66, citing State ex rel. Arthurs v. Board of County Commissioners (1911), 44 Mont. 51, 118 P. 804, and Howe, supra. Further, this Court has stated in Williams, supra, that: "A substantial compliance with the statute is sufficient and technical objections will not defeat an exemption claim." 106 Mont. at 126, 75 P.2d at 786.

In each of these Montana cases the Court looked to the

-6-

purpose of the particular requirement in determining whether the defect would void the entire declaration. Where the defect would not work to the detriment of another party the declaration was upheld. The purpose of including the legal description of the property in homestead declarations, is to put all the world on notice as to what property is affected by the declaration. Following the rationale of these prior Montana cases, if the property can be found by the legal description contained on the declaration, then the declaration should be valid. In the present case, the appellant is further aided by the fact that the respondent knew where the property was located and knew it was the subject of the homestead declaration. Combined with the rule that Montana homestead laws will be liberally construed in favor of the claimant, Dunbar, supra, this leads us to hold that the defect does not invalidate the declaration in this case.

The second issue raised on appeal is whether the plaintiff's homestead exemption is limited to her exemption rights as of the time she entered into her contract debt with the defendant. Section 70-32-104(2), MCA, as amended October 1, 1981, states:

> "Such homestead, in either case, shall not exceed in value the sum of $40,000. However, in any proceedings instituted to determine the value of such homestead, the assessed value of the land which included appurtenances, if any, and of the dwelling house as appears on the last completed assessment roll preceding the institution of such proceedings shall be prima facie evidence of the value of the property claimed as a homestead."

This section was first enacted in our Civil Code, 1895, and reenacted several times but amended upwards from

the value of $2,500 in the original act, now to the latest amount $40,000 from the prior $20,000. As noted in the facts, appellant filed her declaration of homestead prior to the effective date of the latest amendment.

Respondent relies on a long established statutory rule of construction in arguing that the increased homestead exemption amount should not apply to debts contracted prior to October 1, 1981 because such an application would be retroactive in effect. Section 1-2-109, MCA, provides that "no law contained in any of the statutes of Montana is retroactive unless expressly so declared."

Resolution of this issue involves a two step process. First it must be determined if the proposed application of the amendment would be retroactive in effect. If this is answered in the negative, the application sought is prospective and the inquiry ends. If the application sought would be retroactive in effect, then to validate such an application, a legislative intent for it to operate in such a manner must exist. See Castles v. State, ex rel. Department of Highways (Mont. 1980), 609 P.2d 1223, 37 St.Rep. 734. Appellant argues first that the application sought is not retroactive and second that even if it is, the legislature intended the amendment to be retroactively applied.

A retroactive law is one which "[T]akes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions already past." City of Harlem v. State Highway Commission (1967), 149 Mont. 281 at 284, 425 P.2d 718 at 720. The amendment here being

-8-

considered, increasing the homestead exemption, obviously does not create any new obligations or impose any new duties. Nor does the act making the increased exemption applicable to all debts whenever contracted, constitute a law which "takes away or impairs vested rights acquired under existing contracts."

The contract here between the parties in no way involved the plaintiff's homestead. Indeed, the homestead statute itself provided a means by which the respondent First Federal, could have obtained a vested right to execute against the appellant's homestead free of any homestead exemption whatsoever under its "existing contract." See, Section 70-32-202(3) and (4), MCA, (pre-amendment) and Section 70-32-202(2) and (3), MCA, (post-amendment), which both specifically exclude any homestead exemption for a claimant when the creditor executes on a debt secured by a collateral mortgage on the homestead. Had respondent First Federal by contract made its loan to the appellant contingent upon a collateral mortgage on her homestead, there would be no homestead exemption whatsoever under either pre-amendment or post-amendment Montana homestead law.

Here, rather than bargaining for a collateral mortgage on Mrs. Neel's homestead as a condition for the loan and thereby acquiring a vested right under the loan contract, the stipulation of facts presented to the trial court, paragraph 5 stated:

> ". . . at no time prior to making the
> loan, did any agent of First Federal ask
> plaintiff Neel about her residence as
> collateral for the loan, or state to
> plaintiff Neel that First Federal deemed
> plaintiff Neel's residence property at

-9-

402 Fifth Avenue North, Great Falls, Montana to be additional security for the loan. The loan for the property described in paragraph 2 [the property purchased with the loan] was secured by the mortgage to that property alone."

Why this was not done as part of the bargain for her loan is unexplained. Perhaps it was due to the fact, that to do so would have required the assent and consideration of her husband, John S. Neel, who owned the homestead property in joint tenancy with plaintiff. It is clear, however, that by not making a collateral mortgage on plaintiff's homestead property a part of the contract bargain between the parties, the respondent was not required to obtain the husband's approval for the loan or obtain his signature subjecting his homestead to be lost if the loan could not be repaid. Thus, without in any way making the appellant's homestead a part of the bargain and without obtaining the husband's consent, the respondent was able to negotiate a loan for a substantial sum of money to the plaintiff and her partner with the prospect of receiving an 11% interest return.

The right which respondent claims was infringed upon when the legislature applied the increased homestead exemption to all debts, even after judgment was entered, was therefore not a right acquired under an existing contract.

The fact that the respondent later obtained a judgment on its debt against the plaintiff Neel, moreover, did not magically transform this into a right acquired by contract. See Home Bldg. & Loan Assoc. v. Blaisdell (1934), 290 U.S. 398 at 429, 54 S.Ct. 231 at 236, 78 L.Ed. 413 at 424, n. 8; and Stanford v. Coram (1903), 28 Mont. 288, 72 P. 655. As was stated in Stanford, supra, when a claim on a contract is reduced to judgment, "The contract between the parties is

-10-

voluntarily surrendered and canceled by merger in the judgment and ceases to exist. It is no longer looked to for any purpose except as evidence supporting the judgment." 28 Mont. at 292, 72 P. at 655.

However, the right to execution is a "right acquired under existing laws." We find it unnecessary to determine when this right vested, suffice it to say that the right did vest before the effective date of the subject amendments. Laws existing at the date a contract is executed are as much a part of the contract as if set forth therein. Rieger v. Wilson (1936), 102 Mont. 86, 56 P.2d 176. A judgment on a contract does not create a new right, but only, "[D]efines and determines what rights already exist." Stanford, supra, 28 Mont. at 291, 72 P. at 655. Since the application sought by appellant would impair rights acquired under existing laws, the proposed application would be retroactive in effect.

In Montana law, there exists a presumption against retroactive application of statutes. Dunham v. Southside National Bank (1976), 169 Mont. 466, 548 P.2d 1383. For a statute to be retroactively applied, such an intent must be clearly expressed by the legislature. Section 1-2-209, MCA. The legislative intent must be gathered from the act itself and no other source. Penrod v. Hoskinson (1976), 170 Mont. 277, 552 P.2d 325. However, "If it is unmistakable that an act was intended to operate retrospectively, that intention is controlling as to the interpretation of the statute, even though it is not expressly so stated." Davidson v. Love (1953), 127 Mont. 366 at 370, 264 P.2d 705 at 707.

Here the legislature entitled the act which increased the homestead exemption from $20,000 to $40,000, "an act to revise the homestead laws; increasing the exemption to $40,000 . . . allowing the exemption to be claimed after a judgment is recorded." The appellant took advantage of this act, asserted her rights as the law allows her to do and claimed the $40,000 exemption after the judgment recovered by First Federal had been recorded. We find that the legislative intent is clear and allowed the appellant to obtain the benefits of the increased exemption on debts contracted prior to October 1, 1981.

The respondent contends that there is nothing in the statute, Section 70-32-104, MCA, that expressly declares it retroactive. Therefore since there is a presumption in Montana that statutes operate prospectively only, every reasonable doubt should be resolved against retroactive application. The appellant counters arguing that Section 70-32-104, MCA, clearly indicates in the title of the statute the fact that it is remedial in nature, which requires retroactive application. She further cites to the legislative history of the act which points to the legislative objective behind the amendment; to comply with the Constitutional mandate to "[E]nact liberal homestead and exemption laws." Constitution of the State of Montana, Article XIII, section 5.

We are guided by the maxim of law which favors giving protection to the homestead. In Montana, the homestead laws are to be liberally construed in favor of the homestead claimant. Oregon Mortgage Co. v. Dunbar, supra. Under the correct approach, the creditor claiming the homestead is on

-12-

the same plane as other creditors seeking the proceeds of a judicial sale and all creditors are paid according to their respective ranking after payment of cost. The whole theory of the exemption of the homestead is that the obligation of the debtor to those whom he owes the duty to support is a higher obligation than the payment of his debts. The purpose of the framers of the law was to secure a home beyond the reach of financial misfortune, around which gather the affections of the family; the greatest incentive to virtue, honor and industry. Despite the absence of an express declaration, we find that the legislative intent is unmistakable; the amendments are to apply to all debts whenever contracted.

Issue three is whether the amendments to the homestead act which increase the homestead exemption from $20,000 to $40,000, and allow the increased exemption to be claimed even after judgment, violate the Montana and United States Constitutions' contract clauses.

The United States Constitution, Article 1 Section 10, cl. 1, in pertinent part reads: "No state shall. . . pass any. . . law impairing the obligation of contracts . . ." The language contained in Article II, section 31 Montana Constitution 1972, is substantially the same as the contract clause language of the United States Constitution. This Court has construed the two contract clauses interchangably, relying on United States Supreme Court opinions to test the validity of Montana legislation under both contract clauses, see e.g., The City of Butte v. Roberts (1933), 94 Mont. 482, 23 P.2d 342.

It is the position of respondent that the act which

allows a homestead-owner, such as appellant to obtain a homestead exemption increased from $20,000 to $40,000, violates the contract clause when invoked against creditors who extended credit or obtained judgments prior to the act's effective date.

This argument has merit, in that the right to execute on appellant's homestead was acquired prior to the effective date of the amendments. As noted in discussion of the prior issue it is unnecessary to find at what point the right vested; suffice it to say the vesting predated the amendments as laws existing at the date a contract is executed are as much a part of the contract as if set forth therein. Reiger, supra.

Early case law supports the respondent's position. See Edwards v. Kearzey (1877), 96 U.S. 595, 24 L.Ed. 793, and Rieger v. Wilson (1936), 102 Mont. 86, 56 P.2d 176. While earlier judicial pronouncements lent support to the contentions of respondent, the latest cases of the United States Supreme Court and cases of this Court are to the contrary. See, City of El Paso v. Simmons (1965), 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446. Earlier cases, Reiger, supra, held that if a remedy formerly available to enforce a contract was abrogated or substantially effected by state action, then the contract itself was impaired. Later the Court's decisions began to concern themselves with the fine distinction between the remedy and the obligation.

In Simmons, the United States Supreme Court summarizes development of the law in this language:

> "The City seeks to bring this case within a long line of cases recognizing that distinction between contract obligation and remedy and permitting a modification

-14-

of the remedy as long as there is no substantial impairment of the value of the obligation. (citations omitted)

". . .

"We do not pause . . . to chart again the dividing line under federal law between 'remedy' and 'obligation'. . . For it is not every modification of a contractual promise that impairs the obligation of contract under federal law, any more than it is every alteration of existing remedies that violates the Contract Clause." (citations omitted)

". . .

"The decisions 'put it beyond question that the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula,' as Chief Justice Hughes said in Home Building & Loan Assn. v. Blaisdell, 290 U.S. 389, 428. The Blaisdell opinion, which amounted to a comprehensive restatement of the principles underlying the application of the Contract Clause, makes it quite clear that '[n]ot only is the constitutional provision qualified by the measure of control which the State retains over remedial processes, but the State also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end "has the result of modifying or abrogating contracts already in effect." (citations omitted) Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order . . . . This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had the progressive recognition in the decisions of this Court.'(citations omitted) Moreover, the 'economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts.' (citations omitted) The State has the 'sovereign right. . . to protect the. . . general welfare of the people . . . . Once we are in this domain of the reserve power of a State we must respect the "wide discretion on the

-15-

part of the legislature in determining what is and what is not necessary."' (citations omitted) As Mr. Justice Johnson said in Ogden v. Saunders, '[i]t is the motive, the policy, the object, that must characterize the legislative act, to affect it with imputation of violating the obligation of contracts.' 12 Wheat. 213, 291.

"Of course, the power of a State to modify or affect the obligation of contract is not without limit. '[W]hatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other. This principle precludes a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them.' Blaisdell, supra at 439." 379 U.S at 503-9, 85 S.Ct. 581-4, 13 L.Ed.2d 451-5.

Following this reasoning is <u>Hooter v. Wilson</u> (Louisiana 1973), 273 So.2d 516, where the Supreme Court of Louisiana noted:

"When the state changed the remedy by increasing the exemption, it did not abrogate the remedy; it did not make the remedy any less certain than it was at the time of contract; it simply in the interest of the public welfare increased the debtor's exemption so that he and his family might be saved from being a charge upon the state." 273 So.2d at 522.

In Ouachita National Bank v. Rowan (~~Louisiana~~ 1977), La. App. 345 So.2d 1014, again the Louisiana court reasoned:

"The homestead exemption was not a new creation of the 1974 Constitution but was a continuation and a mere modification or increase of the existing exemption. We have found that the modification (or increase) does not impair the contracts at issue . . ., but even should our findings be otherwise, we also would find

-16-

'the economic interest of the state. . .[to] justify the exercise of its continuing dominant protective power notwithstanding interference with contracts.' (citations omitted) The result here does not repudiate the '. . . debts or destruction of contracts . . . or [deny the Bank the] the [sic] means to enforce them.'" 345 So.2d at 1018.

Our holding does not do violence to the holdings of the cases referred to by respondent under the respective factual circumstances there present. Those cases were not decided under similar circumstances or in light of the authority presented here.

It is to be noted that the respondent in relying on Kearzey, supra, and Rieger, supra, as being the law, failed to discuss the most recent United States Supreme Court Opinion on the contract clause, Energy Reserves Group, Inc., v. Kansas Power and Light Co. (1983) ____ U.S. ____, 103 S.Ct. 697, 74 L.Ed.2d 569.

The Supreme Court in Energy Reserves, noted that an examination of the legislation for validity under the contract clause requires a three step analysis. The threshold inquiry is "whether the state law has, in fact, operated as a substantial impairment of the contractual relationship." ____ U.S. at ____, 103 S.Ct. at 704-5, 74 L.Ed.2d 569; citing Allied Structural Steel Co. v. ~~Spanaus~~ Spannaus (1978), 438 U.S. 234 at 244, 98 S.Ct. 2716 at 2722, 57 L.Ed.2d 727. If there is no substantial impairment of the contractual relationship, the inquiry is ended. Second, if the legislation substantially impairs the contractual rights, "[t]he state, in justification, must have a significant and legitimate public purpose behind the regulation." ____ U.S. at ____, 103 S.Ct. at 705, 74

L.Ed.2d 569; citing U.S. Trust Co. v. New Jersey (1977), 431 U.S. 1 at 21, 97 S.Ct. 1505 at 1518, 52 L.Ed.2d 92. Third, the adjustment of rights and responsibilities of contracting parties must be based "[u]pon reasonable conditions" and be "[o]f a character appropriate to the public purpose justifying the legislation's adoption." ____ U.S. at ____, 103 S.Ct. at 705, 74 L.Ed.2d 569. As the opinion notes, unless the State is a party to the contract, courts will properly defer to legislative judgment on this third step. Since the State is not a party to this contract we will not question the propriety of this legislation, thus we are faced with a two part inquiry on the facts presented.

Energy Reserves Group, supra, set forth criteria for making the threshold determination on substantial impairment. Total destruction of contractual expectations is not necessary, and a law which restricts a party to gains reasonably expected from a contract is not a substantial impairment. Further, the extent the particular industry has been regulated in the past will mollify the amount of impairment, if any. We find that the act as applied in the manner proposed by appellant does not operate as substantial impairment of the parties contractual relationship.

In this case, the area in dispute had been heavily regulated in the past. Indeed there has been a homestead exemption law literally before Montana became a state. See Section 194, page 81, Bannack Statutes; Section 1-9, page 77-79, (1869). "When he [respondent] purchased into an enterprise already regulated in the particular to which he now objects, he purchased subject to further legislation upon the same topic." Energy Reserves Group, supra, ____

-18-

U.S. at \_\_\_\_, 103 S.Ct. at 705, 74 L.Ed.2d 569, citing Viex v. Sixth Ward Building and Loan Association (1940), 310 U.S. 32 at 38, 60 S.Ct. 792 at 794-5, 84 L.Ed. 1061. Here respondent made its loan to the appellant and Louise Manzer subject to further legislation on homestead exemptions. Respondent's execution rights are granted by law, independent of its remedies provided in the contract. "Parties appealing to the law can take only what the law awards them." Stanford v. Coram (1903), 28 Mont. 288 at 292, 72 P. 655 at 655. The respondent should have been well aware that the homestead exemption had been increased regularly over the past fifty years, and knew that appellant's residence would be subject to homestead exemption, therefore took its chances that the State might increase it. See, United States v. Smith (E.D. Louisiana 1980) 486 F.Supp. 76 at 78.

In addition, Montana's act allowed the increased exemption to be claimed after judgment, which simply restricted respondent to gains reasonably expected from its contract. Because the loan was not secured by a collateral mortgage on the homestead, respondent, at the time of the loan, could not reasonably have relied upon appellant's continued ownership of the homestead property to the time of execution and judgment. Hooter v. Wilson (Louisiana 1973), 273 So.2d 516 at 522. Here respondent did not question appellant about her residence as collateral for the loan, or state that it deemed her residential property to be additional security. Rather than being a "central undertaking" of the parties in the loan agreement, the continued existence of appellant's interest in her homestead

property at the time of execution by the respondent was no more than an unbargained for windfall. In short the creditor's reasonable expectations were not impaired by the state act.

We therefore find that the act increasing the homestead exemption and allowing claimants to claim the increased $40,000 exemption applies to all debts, whenever contracted, regardless of whether those debts were already reduced to judgment. This interpretation is reasonable and necessary to insure an adequate homestead exemption to the people of Montana and applies to the case at bar. Even if the amendment had operated as a "substantial impairment" of the parties contractual relationship, it would be valid under the second step of the contract clause analysis. In the instant case, we must attempt to reconcile the strictures of the contract clause with the "essential attributes of sovereign power. . . necessarily reserved to the states to safeguard the welfare of their citizens." U.S. Trust Co. v. New Jersey (1977), 431 U.S. 1 at 21, 97 S.Ct. 1505 at 1518, 52 L.Ed. 2d 92. Without this legislation, a vast class of debts contracted prior to October 1, 1981, would be immune from this remedial legislation, and a large class of citizens would therefore continue to suffer under the onus of an inadequate $20,000 exemption which the legislature felt did not meet the times or our Constitution.

Issue four is whether appellant is entitled to the full $40,000 homestead exemption on the equity in her undivided one-half interest in her homestead propery. Appellant argues that an undivided interest is entitled to

the entire homestead exemption instead of an amount proportional to her interest as suggested by respondent. The gist of the respondent's argument is that the homestead exemption applies to property as a whole, there being only one exemption. Thus when an owner of an undivided interest in property claims an exemption, he or she is limited to the exemption amount proportional to his or her undivided interest. In support thereof, respondent cites a number of California cases, in particular it alleges as controlling an appellate court decision, Application of Rauer's Collection (1948), 87 Cal.App.2d 248, 196 P.2d 803. We note that since the Rauer's opinion, decisions of the California courts have refused to follow the holding in that case, thus it is not good authority for respondent's position. See, Schoenfeld v. Norberg (1970), 11 Cal.App.3d. 755, 90 Cal.Rep. 47; Strangman v. Duke (1956), 140 Cal.App.2d 185, 295 P.2d 12. In Strangman, supra, the California Court noted, "There is no provision in our statute for the apportionment of an exemption in any situation." In Montana we likewise have no such provision. The Strangman decision, supra, held that if one spouse's creditors move against his/her undivided interest in the homestead property held in joint tenancy, that the spouse gets the benefit of the entire exemption. Finding the California decisions irreconcilable, we believe the holding in Strangman, supra, is preferable and is in accord with Montana law.

Section 70-32-103 MCA, provides from whose property the homestead may be selected. If the claimant is married, the homestead may be selected from property of either spouse. In addition to our statute, this Court has held

-21-

several times that a homestead may be claimed on an undivided interest in the land. See Wall v. Duggan (1926), 76 Mont. 239, 245 P. 953; Esterly v. The Broadway Garage Co., et al. (1930), 87 Mont. 64, 285 P. 172; DeFontenay v. Childs (1933), 93 Mont. 480, 19 P.2d 650; Isom v. Larson (1927), 78 Mont. 395, 255 P. 1049. In Lindley v. Davis (1887), 7 Mont. 206, 14 P. 717 this Court held that a tenant-in-common is entitled to the full homestead exemption.

In addition, as previously noted in this opinion, strong policy considerations exist which mandate that either debtor/spouse be entitled to the full $40,000 homestead exemption on his or her undivided half interest in the property. In Montana, homestead laws are to be liberally construed in favor of the claimant. Oregon Mortgage Co. v. Dunbar, supra. We therefore find that appellant is entitled to the full $40,000 homestead exemption on her undivided one-half interest in the homestead property.

The judgment of the District Court is reversed and the case is remanded for further proceedings in compliance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

Daniel J Shea

L. C. Zullbrandson

_____

John B Morrison

John C. Sheehy

Justices