No. 87-545

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

HOAGY CARMICHAEL,
            Relator,

        -vs-

THE WORKERS' COMPENSATION COURT OF
THE STATE OF MONTANA, THE HONORABLE
TIMOTHY REARDON, PRESIDING and ARCO
METALS, INC.,
            Respondents.

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relator:

        Bothe & Lauridsen; Laurie Wallace argued, Columbia
        Falls, Montana

    For Respondent:

        Murray, Kaufman, Vidal & Gordon; James Ramlow argued,
        Kalispell, Montana

        Submitted:    September 1, 1988

        Decided:      November 1, 1988

Filed:

FILED

'88 NOV 1 AM 9 55

CLERK
MONTANA SUPREME COURT

_____
        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Hoagy Carmichael petitioned this Court for a writ of supervisory control challenging the 1987 amendments to the Workers' Compensation Act concerning dispute resolution and mediation, §§ 39-71-2401 and -2406 through -2411, MCA. We granted the writ for the purpose of determining whether these statutes are constitutional as applied to cases where the injury occurred before the effective date of the amendment, but no petition was filed with the Workers' Compensation Court until after that date. We find such a retroactive application unconstitutionally impairs a contractual obligation.

Hoagy Carmichael was injured on August 8, 1985, while working in the course and scope of his employment with the respondent, Arco Metals, Incorporated (Arco). Arco is a self insured employer and accepted Carmichael's compensation claim. Arco commenced the payment of benefits, but subsequently notified Carmichael in a letter dated July 24, 1987, that the benefits would be reduced from temporary total disability to permanent partial disability. In response, on August 3, 1987, Carmichael filed a petition for an emergency hearing before the Workers' Compensation Court. In his petition, Carmichael stated that due to his disability he was unable to return to work and he had no means of support for his family other than his workers' compensation benefits.

On September 15, 1987, Arco filed a motion to dismiss Carmichael's claim based on § 39-71-2408, MCA, which requires both parties to submit to nonbinding mediation regarding any issue concerning benefits before either party may file a petition in the Workers' Compensation Court. Section

2

39-71-2408, MCA, became effective July 1, 1987 and is part of a group of statutes added to the Montana Workers' Compensation Laws by the 1987 Montana Legislature providing for mandatory nonbinding mediation. Sections 39-71-2401 and -2406 through -2411, MCA. Carmichael resisted the motion claiming the retroactive mandatory mediation deprived him of procedural due process and the right to a speedy remedy for his injury.

In an opinion filed November 20, 1987, the Workers' Compensation Court determined the retroactive application of the mandatory mediation process did not violate claimant's constitutional rights. The court recognized the mediation may result in some delay, but the delay was not so substantial as to render the process unconstitutional. While noting the mandatory mediation may cause some hardship, the court also rejected Carmichael's due process argument. However, the court did review the Administrative Rules which elaborate on the implementation of the mandatory mediation, allowing a maximum of 100 days to complete the mediation process, and concluded this maximum time period must not exceed 49 days. The court adopted the 49-day time period based on § 39-71-610, MCA, permitting the Division upon petition and at the Division's discretion, to extend benefits for 49 days after the termination of benefits. By making this modification, the court hoped to relieve some of the potential hardship caused by delays during mediation. The court granted the defendant's motion to dismiss and ordered the mediation process be completed within 49 days.

On December 16, 1987, Carmichael filed an application for a writ of supervisory control. On February 8, 1988, this Court granted the writ and decided to hear the following issue:

3

Whether the 1987 amendments to the Workers' Compensation Act concerning dispute resolution and mediation, §§ 39-71-2401 and -2406 through -2411, MCA, apply, and if so, are constitutional as applied, to cases in which the injury occurred before July 1, 1987, but no petition was filed with the Workers' Compensation Court until after that date.

Both parties hold the position that the mediation statutes, as written, apply to the facts of this case. The relator, Carmichael, chose to divide the remaining constitutional issue into four sub-issues:

Do the mandatory, nonbinding mediation requirements of § 39-71-2401 et seq., MCA, unconstitutionally:

1. impair the obligation of contracts as between Workers' Compensation insurers and those injured workers receiving benefits prior to July 1, 1987;

2. violate the due process clause of the Federal and State Constitutions as applied to termination-of-benefits disputes;

3. deprive Workers' Compensation claimants of the remedy to petition the Workers' Compensation Court for a 49-day extension of benefits when those benefits are disputed;

4. deny Workers' Compensation claimants of a speedy remedy for an injury to a vested property right?

Because we determine the nonbinding mediation requirements unconstitutionally impair a contractual obligation when applied to the facts of this case, we need not go beyond an analysis of the first issue.

Generally, Carmichael's argument is based on the fact that his injury occurred prior to the time the legislature enacted the nonbinding mediation requirements. The enactment applies to all injured workers regardless of the date of

4

injury. 1987 Mont. Laws 464, Section 72. Carmichael argues the retroactive change results in a significant procedural delay substantially impairing his contractual rights.

"This Court has assumed for a number of years that the Workers' Compensation statutes in effect on the date of injury set the contractual rights between the parties." Buckman v. Montana Deaconess Hosp. (Mont. 1986), 730 P.2d 380, 384, 43 St.Rep. 2216, 2222 (citing Trusty v. Consolidated Freightways (Mont. 1984), 681 P.2d 1085, 1087, 41 St.Rep. 973, 975). Both the United States and Montana Constitutions prohibit state laws impairing the obligation of a contract. Art I, Sec. 10, U.S.Const; and Art. II, Sec. 31, Mont.Const. Carmichael recognizes this prohibition is not absolute, but contends there has been a substantial impairment of a contractual right within the meaning of the United States and Montana Constitutions under the facts of this case. Carmichael argues that following his injury and after his benefits began, he obtained a vested contractual and property right. After this right vested and prior to July 1, 1987, he had the right to directly petition the Workers' Compensation Court if his benefits ceased. The mandatory mediation statutes retroactively altered this right to directly petition the Workers' Compensation Court. Carmichael concludes since the mediation may result in a substantial delay causing him a significant hardship, the new mediation procedure is a substantial impairment of his vested contractual right.

Arco agrees that Carmichael has a contractual right which vested at the time of his injury and that his benefits cannot be subsequently altered by legislation. E.g., Buckman, 730 P.2d at 384-85, 43 St.Rep. at 2222. However, Arco states Carmichael is confusing his contractual right to

5

workers' compensation benefits with an alleged right to uninterrupted payments in all circumstances. Arco argues the legislature has implemented a procedural change to encourage settlements and reduce the caseload of the Workers' Compensation Court. Arco concludes this is merely a modification of the system for determining the eligibility for benefits, and in no way alters the benefits to which Carmichael may or may not be entitled.

In analyzing a contract clause challenge, this Court has often implemented a three-tiered analysis set forth by the United States Supreme Court in Energy Reserves Group, Inc. v. Kansas Power and Light Co. (1983), 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569: (1) Is the state law a substantial impairment to the contractual relationship? (2) Does the state have a significant and legitimate purpose for the law? (3) Does the law impose reasonable conditions which are reasonably related to achieving the legitimate and public purpose? See, Neel v. First Federal Sav. and Loan Assoc. (1984), 207 Mont. 376, 392, 675 P.2d 96, 104-105. See also, Buckman, 730 P.2d at 385, 43 St.Rep. at 2007. Although this Court clearly recognizes that our state constitution provides rights and protections separate from those afforded by the federal constitution, "[w]e have generally interpreted the contract clauses found in Art. II, § 31, 1972 Mont. Const. and Art. I, § 10(1), United States Constitution as interchangeable guarantees against legislation impairing the obligation of contracts." Buckman, 730 P.2d at 384, 43 St.Rep. at 2221, (citing Neel, 675 P.2d at 103, 41 St.Rep. at 25). In analyzing this issue, we will implement the three-tiered analysis stated above.

The initial inquiry therefore, is whether the mandatory mediation statutes operate as a substantial impairment of the

6

contractual relationship between workers' compensation insurers and workers injured prior to July 1, 1987. If the answer is no, there need be no further inquiry. "Total destruction of contractual expectations is not necessary, and a law which restricts a party to gains reasonably expected from a contract is not a substantial impairment." Neel, 207 Mont. at 392, 675 P.2d at 105. Prior to the passage of the mediation statutes, an injured worker had the right to directly petition the Workers' Compensation Court to resolve disputes concerning benefits under the Workers' Compensation Act. Section 39-71-2905, MCA, (1985). As previously noted, the mandatory nonbinding mediation process must now be satisfied prior to filing such a petition. Section 39-71-2908, MCA, (1987). In the opinion filed by the Workers' Compensation Court, it was noted that the mediation may result in a delay of 100 days. With the exception of his workers' compensation benefits, the record indicates Carmichael is without financial resources to support his family. The delay presented by the current mediation statutes is an additional delay not existing on the date Carmichael was injured, which was the date his contractual rights vested. Buckman, 730 P.2d at 384, 43 St.Rep. at 2222. We find the delay caused by the mandatory mediation statutes represents a substantial impairment of those contractual rights.

Next, we must ask whether the state has a legitimate and significant purpose for the law. The general purpose of the new mediation statutes is to encourage out of court settlements and thereby lessen the volume of cases filed in the Workers' Compensation Court. Section 39-71-2406, MCA. This appears to represent a legitimate state purpose.

The final step of the analysis is whether the law imposes reasonable conditions reasonably related to achieving the legitimate purpose stated above. As was noted in Neel, "unless the State is a party to the contract, courts will properly defer to legislative judgment on this step." 207 Mont. at 392, 675 P.2d at 105. Since the Workers' Compensation Court is a named respondent, we consider the state a party to this action and will consider this third question.

The record indicates insufficient evidence to demonstrate the mandatory nonbinding mediation presents conditions reasonably related to achieving the stated purpose as applied to those workers injured before the effective date of the statutes. Certain vague statistical evidence was presented tending to show the mediation procedures were encouraging settlement, but the statistics fail to give any clear answers. Certainly there is insufficient evidence to demonstrate the mediation process will achieve a more manageable caseload for the Workers' Compensation Court when applied to claimants injured prior to July 1, 1987; those claimants whose contractual rights to benefits vested on the date of injury.

Carmichael demonstrates a substantial impairment of his contractual rights and there is insufficient evidence to demonstrate the mediation statutes achieve their purpose as applied to claimants injured prior to the effective date of the statute. We hold the retroactive application of the mandatory nonbinding mediation statutes unconstitutionally impairs a contractual obligation. Accordingly, Carmichael may directly petition the Workers' Compensation Court.

For the foregoing reasons, we reverse the decision of the Workers' Compensation Court and remand for further consideration consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice


_____

_____
Justices

Mr. Justice Fred J. Weber dissents as follows:

Statutes have a strong presumption of constitutionality. The burden is upon the party attacking the statute to prove unconstitutionality, and it is the duty of the court to resolve all doubts in favor of validity whenever possible. Reeves v. Ille Electric Co. (1976), 170 Mont. 104, 109, 551 P.2d 647, 650. With this rule in mind, I dissent from the majority's conclusion that the mediation requirement of §§ 39-71-2401 and -2406 through -2411, MCA, unconstitutionally impairs contractual obligations as it is retroactively applied to Mr. Carmichael. I further conclude that Mr. Carmichael has not shown the requirement to be unconstitutional by the other arguments he raised.

In the order appealed from, the Workers' Compensation Court ruled that the mediation requirement is constitutional as applied to Mr. Carmichael and others whose benefits have been paid and then terminated. The court further ruled that in such cases the mediation process must be completed within 49 days after the request for mediation. It also provided that such claimants would have the option of seeking an interim order from the Division of Workers' Compensation under § 39-71-610, MCA. That section allows disputed benefits to be reinstated for up to 49 days.

The majority uses the three-tier test set forth in Energy Reserves in concluding that application of the mediation requirement in this case unconstitutionally impairs a contractual obligation. That test requires that if a state law substantially impairs a contractual right, the state must show a significant and legitimate purpose which the law imposes reasonable conditions toward achieving. The majority initially concludes that the delay caused by the mandatory

10

mediation statutes represents a substantial impairment of contractual rights.

In my opinion, there has been no showing that the mediation requirement substantially impairs any contractual right. The requirement does not affect Mr. Carmichael's right to workers' compensation payments; it only presents the possibility of a delay in his receiving compensation, provided that he shows he is entitled to it. Even under the previous statute, workers had no vested right to uninterrupted compensation payments between the time the employer terminated them for ineligibility and the ruling by the Workers' Compensation Court. Because he raised this matter on supervisory control before proceeding through mediation, Mr. Carmichael has made no showing that he is entitled to reinstatement of his benefits. Second, Mr. Carmichael has made no showing of an actual delay in his case. We don't know whether or not the use of the mediation plus the court process might have resulted in a shorter period of time in the present case. I therefore disagree with the theory set forth in the majority opinion that the delay presented by mediation is an "additional delay" not existing on the date Mr. Carmichael was injured. Third, this Court has recognized that in heavily regulated industries, which description fits the area of workers' compensation law, it is inappropriate to assume that procedural regulations will remain static. Neel v. First Federal Sav. and Loan Assoc. (1984), 207 Mont. 376, 392-93, 675 P.2d 96, 105.

As a result of my conclusion that there has been no substantial impairment of any contractual right of Mr. Carmichael's, I would not need to proceed to the other 2 tiers of the Energy Reserves test. However, because the majority concludes that there was an impairment of a contractual right, I will briefly discuss the remaining 2 tiers. I

11

agree with the majority conclusion that the second tier is met because encouraging out of court settlements and thereby lessening the volume of cases filed in the Workers' Compensation Court is a legitimate and significant purpose.

The final tier is whether the law imposes reasonable conditions toward achieving its purpose. I conclude that a mediation process is an appropriate means to address the Legislature's purpose. The hearing examiner for the Workers' Compensation Court submitted an affidavit to this Court which compared case filings before and after the mediation requirement was adopted and showed dispositions of cases mediated in the first 10 months. The affidavit showed that in the 10 months in which the mediation requirement had been in effect, filings of petitions in the court were reduced from over 900 to 167. The affidavit also showed that 300 mediations had been completed during that period, 159 of which were resolved by mediation. We have substantial evidence that the Legislature's chosen means is working satisfactorily for a large number of claimants. I would therefore conclude that the mediation requirement meets the three-tier test set forth in Energy Reserves.

Because it found the contracts clauses of the U.S. and the Montana Constitutions were violated by application of the mediation requirement in Mr. Carmichael's case, the majority did not consider the three other arguments against the new statutes. I will address them briefly.

Mr. Carmichael argues that the mediation requirement violates his due process rights. He has not cited any authority that a delay in re-establishing a right which has been unchallengedly taken away is a deprivation of due process. Further, under the former statutes, there was no right to a decision by the Workers' Compensation Court within any particular time. The 60-day hearing rule is a procedural

12

rule of the Workers' Compensation Court, not a right established by statute. I conclude that there is no due process problem because there was no right to a continuation of benefits between termination by the employer and a decision by the Workers' Compensation Court.

Mr. Carmichael argues that the mediation requirement deprives him of his remedy of 49 days of payment of disputed benefits, as provided by § 39-71-610, MCA. However, payment of these benefits remains, as it has always been, a discretionary matter with the division once a petition for hearing on termination of benefits has been filed. Mr. Carmichael has not been deprived of the opportunity to request disputed benefits.

Lastly, Mr. Carmichael argues that the mediation requirement deprives him of a speedy remedy for injury to a vested property right in his benefits. We do not have proof properly before us that the delay caused by the mediation requirement exceeds the delay caused by the previous backlog of cases before the Workers' Compensation Court. This Court has recognized, in Linder v. Smith (Mont. 1981), 629 P.2d 1187, 38 St.Rep. 912, that reasonable requirements of first seeking administrative resolution may be placed upon persons without depriving them of their right to access to the courts.

I would therefore affirm the ruling of the Workers' Compensation Court that the mediation requirement of the 1987 amendments to the workers' compensation laws is constitutional as applied in Mr. Carmichael's case and as limited by the Workers' Compensation Court's order.

_____
Justice

13

Chief Justice J.A. Turnage and Justice L.C. Gulbrandson concur in the foregoing dissent.

_____
Chief Justice

_____
Justice

14